James A. SWANSON,
Plaintiff–Appellant–Cross–Appellee,

v.

SOUTHERN OREGON CREDIT SERVICE, INC.,
Defendant–Appellee–Cross–Appellant.

Nos. 87–3756, 87–3874.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted May 6, 1988.

Decided Dec. 16, 1988.

As Amended March 29, 1989.

Doug S. Gard, Medford, Or., for plaintiff-appellant-cross-appellee.

Christopher A. Ledwidge, Frohnmayer, Deatherage, deSchweinitz, Pratt & Jamie-

son, P.C., Medford, Or., for defendant-appellee-cross-appellant.

Before WALLACE and REINHARDT, Circuit Judges, and STEPHENS,* Senior District Judge.

PER CURIAM:

Swanson appeals from the district court's entry of summary judgment to Southern Oregon Credit Service, Inc. (Southern Oregon). Swanson alleges that some of Southern Oregon's debt collection practices violated the Fair Debt Collection Practices Act, 15 U.S.C. §§ 1692 *et seq.* (1982) (Federal Act), and the Oregon Unlawful Debt Collection Practices Act, Or.Rev.Stat. § 646.639 (1987) (Oregon Act). The district court had jurisdiction over the Federal Act claims under 15 U.S.C. § 1692k(d). It declined to exercise jurisdiction over the pendent state claims. We have jurisdiction pursuant to 28 U.S.C. § 1291. We affirm in part, and reverse and remand in part.

I

Swanson owed $262.20 to Cascade Community Hospital. The hospital referred collection of the debt to Southern Oregon. Southern Oregon sent various notices to Swanson and made an indeterminate number of telephone calls in an attempt to collect the debt.

In Swanson's suit against Southern Oregon, he alleged that some of Southern Oregon's debt collection practices violated the Federal Act and the Oregon Act. The district court granted summary judgment for Southern Oregon with respect to Swanson's claims under the Federal Act, denied Swanson's motion for partial summary judgment, and declined to exercise jurisdiction over Swanson's pendent state law claims under the Oregon Act. The district court denied Southern Oregon's request for attorneys' fees and costs. Swanson timely appealed and Southern Oregon cross-appealed the denial of attorney fees and costs. We review a summary judgment de novo. *Ashton v. Cory,* 780 F.2d 816, 818 (9th Cir.1986).

II

Swanson argues that the first notice that Southern Oregon sent to him (initial communication) violates the validation of debts provision contained in 15 U.S.C. § 1692g(a). That section provides that debt collectors must send consumers written notice containing certain information regarding the alleged debt and advising them inter alia that it will be assumed to be valid unless the consumer contests its accuracy or validity within thirty days. The section reads as follows:

(a) Within five days after the initial communication with a consumer in connection with the collection of any debt, a debt collector shall, unless the following information is contained in the initial communication or the consumer has paid the debt, send the consumer a written notice containing—

(1) the amount of the debt;

(2) the name of the creditor to whom the debt is owed;

(3) a statement that unless the consumer, within thirty days after the receipt of the notice, disputes the validity of the debt, or any portion thereof, the debt will be assumed to be valid by the debt collector;

(4) a statement that if the consumer notifies the debt collector in writing within the thirty-day period that the debt, or any portion thereof, is disputed, the debt collector will obtain verification of the debt or a copy of a judgment against the consumer and a copy of such verification or judgment will be mailed to the consumer by the debt collector; and

(5) a statement that, upon the consumer's written request within the thirty-day period, the debt collector

* Honorable Albert Lee Stephens, Jr., Senior United States District Judge, Central District of California, sitting by designation.

will provide the consumer with the name and address of the original creditor, if different from that of the current creditor.

15 U.S.C. § 1692g(a). Congress designed the Federal Act to "eliminate the recurring problem of debt collectors dunning the wrong person or attempting to collect debts which the consumer has already paid." S.Rep. No. 382, 95th Cong.2d Sess. 4, *reprinted in* 1977 U.S.Code Cong. & Admin.News 1695, 1699. It added the validation of debts provision specifically to ensure that debt collectors gave consumers adequate information concerning their legal rights. *See id.*, 1977 U.S.Code Cong. & Admin.News at 1702. In this circuit, the impact of language alleged to violate section 1692g is judged under the "least sophisticated debtor" standard. *Baker v. G.C. Services Corp.*, 677 F.2d 775, 778 (9th Cir.1982) (*Baker*). That is, if we find that the least sophisticated debtor would likely be misled by the notice which Swanson received from Southern Oregon, we must hold that the credit service has violated the Act.

Swanson admits that the initial communication from Southern Oregon contained the basic language required by section 1692g, but argues that its message was contradicted and "overshadowed" by the balance of the notice. The notice Southern Oregon sent Swanson contained, in bold faced type several times larger than the debt validation notice required by section 1692g, the following message:

"IF THIS ACCOUNT IS PAID WITHIN THE NEXT 10 DAYS
IT WILL NOT BE RECORDED IN OUR MASTER FILE AS AN UNPAID COLLECTION ITEM.
*A GOOD CREDIT RATING—IS YOUR MOST VALUABLE ASSET.*"

Beneath this language, in small, standard-face type, was the notice required by the statute. Swanson argued to the district court, and contends again here, that the "visual effect" of the large type language overshadowed the debt validation notice, and that its language and tone constituted an impermissible threat of harm to his credit rating if he should avail himself of the Act's 30 day validation period.

The magistrate, whose findings were adopted without revision or comment by the district court, termed Swanson's argument "frivolous," concluding that "[n]othing in the notice can reasonably be construed as threatening [Swanson] with adverse consequences." This conclusion is patently at odds with the tenor and text of the notice itself. The reference to the undefined "master file," juxtaposed with the admonition that Swanson's credit rating was his "most valuable asset," cannot reasonably be interpreted as anything but a threat: if Swanson did not pay within 10 days, his name would be placed in Southern Oregon's "master file" and as a result he would lose his "most valuable asset." .

■ The magistrate's conclusion demonstrates a fundamental misconception of the nature of section 1692g. The statute is not satisfied merely by inclusion of the required debt validation notice; the notice Congress required must be conveyed effectively to the debtor. It must be large enough to be easily read and sufficiently prominent to be noticed—even by the least sophisticated debtor. *Baker*, 677 F.2d at 778. Furthermore, to be effective, the notice must not be overshadowed or contradicted by other messages or notices appearing in the initial communication from the collection agency. *E.g., Thomas v. National Business Assistants, Inc.*, No. N82–469 (D.Conn. Oct. 5, 1984) ("inconspicuous and grossly overshadowed" notice did "not properly notify recipients of their validation of debt rights"); *Ost v. Collection Bureau, Inc.*, 493 F.Supp. 701, 703 (D.N.D. 1980) (*Ost*) (communication must not be designed to "evade the spirit of the notice statute, and mislead the debtor into disregarding the notice").

■ Reviewing the Southern Oregon notice which Swanson received through the eyes of the least sophisticated debtor, there is little question that it is misleading in both form and content. The required debt validation notice is placed at the very bottom of the form in small, ordinary face type, dwarfed by a bold faced, underlined

message three times the size which dominates the center of the page. More importantly, the substance of the language stands in threatening contradiction to the text of the debt validation notice. The prominence and message of the "master file" and "most valuable asset" language, lead the least sophisticated debtor, and quite probably even the average debtor, only to one conclusion: he must ignore his right to take 30 days to verify his debt and act immediately or he will be remembered as a deadbeat in the "master file" of his local collection agency and will, accordingly, lose his "most valuable asset," his good credit rating.

Congress designed section 1692g to provide alleged debtors with 30 days to question and respond to the initial communication of a collection agency. The form used by Southern Oregon in this case invokes a shorter response period, promising harm to the debtor who waits beyond 10 days. The form thus represents an attempt "on the part of the collection agency to evade the spirit of the notice statute and mislead the debtor into disregarding the [required debt validation] notice." *Ost*, 493 F.Supp. at 703 (collection form requesting payment in five days with validation notice printed in small print on reverse did not comply with section 1692g).

Accordingly, we hold that Southern Oregon's initial communication with Swanson violated section 1692g of the Federal Act.

### III

Swanson also attacks the second notice that Southern Oregon sent him which stated: "Unless payment in full or definite arrangements are made on your account(s) within 48 hours a complete investigation will begin concerning your employment and assets." Swanson argues that the second notice violates 15 U.S.C. § 1692e(5) because Southern Oregon could not legally contact Swanson's employer concerning the debt.

Swanson relies on 15 U.S.C. §§ 1692e(5), 1692c(b), and 1692a(2). Section 1692e(5)[1] bars a debt collector from making a threat "to take any action that cannot legally be taken." Section 1692c(b)[2] prohibits a debt collector from "communicating" with most third parties, including a debtor's employer. Section 1692a(2) defines a "communication" as "the conveying of information regarding a debt directly or indirectly to any person through any medium."

Our threshold question concerns our evaluation of the threat. Obviously, one reader might perceive the communication as a threat to contact the reader's employer while another might not. In *Jeter v. Credit Bureau, Inc.*, 760 F.2d 1168, 1175 (11th Cir.1985), the Eleventh Circuit concluded that it should not interpret the threat through the eyes of the least sophisticated debtor in evaluating certain violations of section 1692e(5). The Eleventh Circuit stated that "the subsection (5) issue is simply whether or not [the debt collector] *intended* to take the action threatened. Thus, subsection (5) requires proof of a fact which amounts to a *per se* violation of § 1692e. The sophistication or lack thereof, of the consumer is irrelevant to whether [the debt collector] 'threat[ened] to take any action ... that [was] not intended to be taken.'" *Id.* Thus, when analyzing a claim that the debt collector threatened action it did not intend to take, the Eleventh

---

**1.** Section 1692e(5) provides:

A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section:

(5) The threat to take any action that cannot legally be taken or that is not intended to be taken.

**2.** Section 1692c(b) provides:

(b) *Communication with third parties*—Except as provided in section 1692b of this title, without the prior consent of the consumer given directly to the debt collector, or the express permission of a court of competent jurisdiction, or as reasonably necessary to effectuate a postjudgment judicial remedy, a debt collector may not communicate, in connection with the collection of any debt, with any person other than the consumer, his attorney, a consumer reporting agency if otherwise permitted by law, the creditor, the attorney of the creditor, or the attorney of the debt collector.

Circuit indicated that the least sophisticated debtor standard would not apply to evaluation of the nature of the threat challenged under section 1692e(5), as well as to the question of the debt collector's intent. However, section 1692e(5) delineates two types of prohibited threats: a threat to take any action that cannot legally be taken *or* that is not intended to be taken. Even if the sophistication of the debtor is irrelevant to the question of the collector's intent, this does not answer the question whether a statement that arguably threatens to take action that cannot legally be taken should be viewed through the eyes of an unsophisticated debtor. In the latter context, the debtor's understanding of the communication is clearly relevant.

We conclude, therefore, that the least sophisticated debtor standard does apply to an allegation that a debt collector made a "threat to take any action that cannot legally be taken." 15 U.S.C. § 1692e(5). Otherwise, a debt collector could couch threatened action in language that misleads some debtors as to what the debt collector could legally do. Allowing such "misleading" threats would run counter to the plain language of section 1692e. ("A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt.") To the extent that *Jeter* can be read to reject the least sophisticated debtor standard for any threats alleged to violate 15 U.S.C. § 1692e(5), we disagree. Therefore, we evaluate the threatened conduct in the second notice under the least sophis-

ticated debtor standard. Although this standard is objective, the standard is lower than simply examining whether particular language would deceive or mislead a reasonable debtor.

The district court determined that the notice did not violate section 1692e(5) because even the least sophisticated debtor would not construe the notice as a threat to take action that could not legally be taken. The district court concluded that "[n]otice that the defendant intended to investigate plaintiff's employment and assets cannot reasonably be construed even by the 'least sophisticated consumer' as threatening any illegal communication regarding the nature or existence of a debtor's obligation."

We see it differently. Under the least sophisticated debtor standard, we hold that Southern Oregon's threat to make a "complete investigation concerning your employment" violates section 1692e(5). Because section 1692c(b) prohibits such unconsented and unauthorized communication with a debtor's employer concerning the debt, the threat constitutes a "threat to take any action that cannot legally be taken." 15 U.S.C. § 1692e(5).

Southern Oregon argues that the second notice is not a misleading threat that violates section 1692e(5) because the least sophisticated debtor would construe the notice as merely stating that in 48 hours Southern Oregon would begin seeking permissible location information. *See* 15 U.S.C. § 1692b.[3] We believe, however, that the

---

**3.** Section 1692b provides:

Any debt collector communicating with any person other than the consumer for the purpose of acquiring location information about the consumer shall—

(1) identify himself, state that he is confirming or correcting location information concerning the consumer, and, only if expressly requested, identify his employer;

(2) not state that such consumer owes any debt;

(3) not communicate with any such person more than once unless requested to do so by such person or unless the debt collector reasonably believes that the earlier response of such person is erroneous or incomplete and that such person now has correct or complete location information;

(4) not communicate by post card;

(5) not use any language or symbol on any envelope or in the contents of any communication effected by the mails or telegram that indicates that the debt collector is in the debt collection business or that the communication relates to the collection of a debt; and

(6) after the debt collector knows the consumer is represented by an attorney with regard to the subject debt and has knowledge of, or can readily ascertain, such attorney's name and address, not communicate with any person other than that attorney, unless the attorney fails to respond within a reasonable period of time to communication from the debt collector.

least sophisticated debtor receiving the second notice would associate the threat to undertake "a *complete* investigation [of] your employment and assets" with an embarrassing inquiry with his employer concerning the debt, concerning his performance as an employee, and concerning his job security. (Emphasis added.) The word "complete" means "possessing all necessary parts, items, components, or elements; not lacking in anything necessary." Webster's Third New International Dictionary 465 (1971). The phrase "complete investigation" connotes something more than simply obtaining permissible location information. If Southern Oregon merely meant to state that after 48 hours it would begin to seek permissible location information, the notice should have so stated. " '[O]ne who deliberately goes perilously close to an area of proscribed conduct [takes] the risk that he may cross the line.' " *FTC v. Colgate-Palmolive Co.*, 380 U.S. 374, 393, 85 S.Ct. 1035, 1047, 13 L.Ed.2d 904 (1965), *quoting Boyce Motor Lines, Inc. v. United States*, 342 U.S. 337, 340, 72 S.Ct. 329, 331, 96 L.Ed. 367 (1952). Southern Oregon crossed the line. *See* S.Rep. No. 382, 95th Cong.2d Sess. 4, *reprinted in* 1977 U.S.Code Cong. & Admin.News 1695, 1699 (the "extremely important protection" that the Federal Act provides in that except for contacts for location information under 15 U.S.C. § 1692b, the Federal Act prohibits a debt collector from contacting "third persons such as a consumer's ... employer. Such contacts are not legitimate collection practices and result in serious invasions of privacy, as well as the loss of jobs.").

To the least sophisticated debtor, the notice threatens that which Southern Oregon legally could not do. *See* 15 U.S.C. § 1692e(5); *Rutyna v. Collection Accounts Terminal, Inc.*, 478 F.Supp. 980, 981–82 (N.D.Ill.1979) (threat "to personally call" a consumer's neighbors and employer concerning the debt violates section 1692e(5)). Thus, Southern Oregon violated section 1692e(5), and summary judgment in its favor on that issue should not have been granted.

## IV

■ Swanson next argues that (1) the master file statement contained in Southern Oregon's initial communication, (2) the statement contained in Southern Oregon's second notice that "[u]nless payment in full or definite arrangements are made on your account(s) within 48 hours a complete investigation will begin concerning your employment and assets," and (3) the statement contained in Southern Oregon's third notice that "[b]y paying this account in full we will notify each credit bureau, where we sent derogatory information, of its paid status," when taken together, constitute oppressive debt collection practices that violate 15 U.S.C. § 1692d. Section 1692d provides, in part, that "[a] debt collector may not engage in any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of any debt." Congress adopted this general language in order to "enable the courts, when appropriate, to proscribe ... improper conduct which is not specifically addressed [in section 1692d(1)–(6) ]." S.Rep. No. 382, 95th Cong.2d Sess. 4, *reprinted in* 1977 U.S.Code Cong. & Admin. News 1695, 1698.

The district court did not address this issue. Southern Oregon contends that Swanson did not raise the issue in the district court, and, therefore, that we should not consider the issue on appeal. *See, e.g., Bolker v. Commissioner*, 760 F.2d 1039, 1042 (9th Cir.1985) (*Bolker* ). At oral argument, Swanson disputed the assertion that he did not raise the issue in the district court, relying on Paragraph 4 of his amended complaint.

Paragraph 4 of Swanson's amended complaint states that "[t]he creditor threatened improper communication with the plaintiff's employer or others regarding the plaintiff's debt, employment, assets or other topics." This paragraph did not put the district court on sufficient notice that the claim was arising under section 1692d. The paragraph neither mentions the statute nor mentions the words "harass, oppress, or abuse." Rather, the paragraph appears to state that Southern Oregon allegedly

violated 15 U.S.C. § 1692e(5) with its second notice. Moreover, the paragraph does not mention all of Southern Oregon's conduct that Swanson alleges violated section 1692d—the initial communication, the master file statement, and the "derogatory information" statement contained in the third notice. Therefore, we decline to address the section 1692d issue. *See Bolker,* 760 F.2d at 1042.

## V

 Southern Oregon appeals the denial by the district court of attorneys' fees and costs pursuant to 15 U.S.C. § 1692k(a)(3). Under section 1692k(a)(3), a debt collector may recover attorneys' fees and costs upon the district court's finding that an action under the Federal Act was brought in bad faith and for purposes of harassment. We review the district court's finding on the bad faith issue under the clearly erroneous standard. *See Juras v. Aman Collection Service, Inc.,* 829 F.2d 739, 745 (9th Cir.1987) (per curiam). We review the ultimate grant or denial for an abuse of discretion. *Perry v. Stewart Title Co.,* 756 F.2d 1197, 1211 (5th Cir.), *modified on other grounds,* 761 F.2d 237 (5th Cir.1985) (per curiam). The district court did not clearly err in finding that Swanson did not bring this action in bad faith and for purposes of harassment and, therefore, it did not abuse its discretion in denying Swanson's request for fees and costs.

We also reject Southern Oregon's request for fees under Or.Rev.Stat. § 646.641(2). By raising this issue for the first time on appeal, Southern Oregon waived it. *Bolker,* 760 F.2d at 1042.

Finally, because we reverse part of the district court's summary judgment, the district court should, on remand, reconsider its decision to dismiss Swanson's pendent state claims arising under the Oregon Act. Of course, we express no opinion on how the district court should exercise its discretion regarding these pendent claims.

AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.

WALLACE, Circuit Judge, concurring and dissenting:

I concur in all but part II of the majority opinion. As to that part, I dissent.

Swanson does not contend that the debt validation clause was omitted from the initial communication. On the contrary, he agrees it was included. Rather, he argues that there was a violation of 15 U.S.C. § 1692g(a) because the debt validation clause, which was in ordinary print at the bottom of the initial communication, was eclipsed by a different provision using very large print in the middle of the initial communication which stated: "If this account is paid within the next 10 days it will not be recorded in our master file as an unpaid collection item. A good credit rating is your most valuable asset."

The district court rejected Swanson's "visual effect" argument. The court concluded that Southern Oregon's notice sufficiently notified Swanson of his section 1692g rights.

After considering the limited case law discussing section 1692g, I believe that we should review the document as a whole in order to evaluate whether a given notice would sufficiently inform a least sophisticated debtor of his debt validation rights. *See Baker v. G.C. Services Corp.,* 677 F.2d 775, 778 (9th Cir.1982); *see also Blackwell v. Professional Business Services of Georgia, Inc.,* 526 F.Supp. 535 (N.D.Ga.1981); *Ost v. Collection Bureau, Inc.,* 493 F.Supp. 701 (D.N.D.1980).

Swanson contends that the visual effect produced by the disparity in typesize between the required validation rights clause and the master file information violates section 1692g. In support of this visual effect argument, Swanson relies on *Thomas v. National Business Assistants, Inc.,* No. N82–469 (D.Conn. Oct. 5, 1984), and an informal Federal Trade Commission (FTC) staff opinion letter. *See* Letter from Alan D. Rifkin to LuAnn Fardell (Aug. 1, 1980), FTC Informal Staff Letter (Fardell letter).

In *Thomas,* a district court accepted a visual effects argument. The debt notification letter there contained a technically valid debt validation provision under 1692g,

but in extra-large type at the bottom of the debt notification, the debt collector printed: "We shall expect payment in full within 3 days." The district court concluded that the letter violated section 1692g because "it does not properly notify recipients of their validation of debt rights. The required notice is inconspicuous and grossly overshadowed by the bold faced statement that payment is expected within three days. In the present form, [the notices] are clearly not intended to apprise the reader of the rights secured to them by § 1692g."

The Fardell letter was written in response to a request directed to the FTC to give an opinion on a particular creditor's dunning notice. The dunning notice stated that the collector "will assume that the consumer [debtor] does not wish to settle the matter amicably if she fails to respond within 72 hours and threatens that it will act accordingly." The Fardell letter concluded that "the demand that the consumer act within 72 hours so interferes with the consumer's absolute statutory right to dispute the debt[, 15 U.S.C. § 1692g,] as to totally negate the effect and purpose of the notice provision, particularly, where as here, there is every reason to believe that the consumer will perceive that some grave consequence will follow within 72 hours." The Fardell letter does not state whether the section 1692g rights were clearly set forth in the communication reviewed.

Such informal advisory opinions express the FTC's then-existing enforcement position. These advisory opinions do not carry the weight of congressionally authorized agency regulations. Congress expressly prohibited the FTC from issuing additional rules and regulations. 15 U.S.C. § 1692*l* (c), (d); *Pressley v. Capital Credit & Collection Service, Inc.*, 760 F.2d 922, 925 n. 2 (9th Cir.1985) (per curiam). Thus, although courts should give some weight to such opinions, they do not bind courts. *See Pressley*, 760 F.2d at 925; *Staub v. Harris*, 626 F.2d 275, 279 (3d Cir.1980).

After reviewing the initial communication, I conclude that the fact that the debt validation notice is clearly printed on the same page and is in ordinary typesize, al-

though somewhat smaller than the master file statement, indicates that even the least sophisticated debtor would understand his debt validation rights. *Cf.* FTC Proposed Commentary on the Federal Act, 51 Fed. Reg. 8019, 8028 (1986) (an illegible notice would not comply with section 1692g). Moreover, unlike the threat evaluated in the Fardell letter, I do not believe that the least sophisticated debtor would understand that some grave consequence would follow from the master file threat in this case. Although there may be validity in the "visual effect" analysis, I conclude that the debt validation clause in the initial communication is not so overshadowed by the master file statement that the least sophisticated debtor would fail to recognize his section 1692g rights. Thus, I would affirm the district court's entry of summary judgment on this issue.