**Raymond ABELS, on behalf of himself and all others similarly situated, Plaintiffs,**

v.

**JBC LEGAL GROUP, P.C., et al., Defendants.**

**No. C 04–02345JW.**

United States District Court,
N.D. California,
San Jose Division.

Oct. 6, 2005.

cases to state court. While the cases were pending, the Supreme Court decided another case involving the Red Cross, *American National Red Cross, v. S. G.*, 505 U.S. 247, 112 S.Ct. 2465, 120 L.Ed.2d 201 (1992), holding that the "sue and be sued" provision of the Red Cross' charter conferred original federal jurisdiction over suits against it. *Id.* at 257, 112 S.Ct. 2465. Within 30 days of the *S.G.* decision, the Red Cross removed the *Doe* cases again under § 1446(b). The Third Circuit held that because the Red Cross was the critical party in *S.G.* and it filed a notice of removal within thirty days after receiving an order of the Court, it was authorized under § 1446(b) to file for re-removal. The *Doe* court held that the *S.G.* opinion qualified as an "order" under § 1446(b) but explicitly limited its holding to the situation where the same party was a defendant in both cases, involving similar factual situations, and the order expressly authorized removal. The court also explicitly declined to decide whether the *S.G.* opinion constituted "other paper" under 1446(b).

Plaintiffs observe that *Green* has a "fatal distinction" because the defendants there were also parties to the intervening judicial decisions that triggered the removal, while in this case, Defendant R.J. Reynolds was not a party in *Watson II*. Defendants argue that the distinction does not undermine the applicability of *Green* (or *Doe*) because *Watson II* is a decision which involves a defendant in the same industry, subject to the same direction and control by the same federal officer, and faced with a virtually indistinguishable complaint. *Green and Doe* are distinguishable from the instant case, however, because the defendants in *Watson II* and *Collora* are not the same, and federal jurisdiction should not be extended beyond the narrow reasoning of the Fifth and Third Circuits. *Nichols v. Harbor Venture, Inc.,* 284 F.3d 857, 861 (8th Cir.2002) (federal removal jurisdiction requires strict construction of the legislation permitting removal).

Ronald Wilcox, Attorney at Law, San Jose, CA, June D. Coleman, Murphy Pearson Bradley & Feeney, Sacramento, CA, O. Randolph Bragg, Horwitz, Horwitz & Associates, Chicago, IL, for Plaintiffs.

June D. Coleman, Mark Ewell Ellis, Murphy Pearson Bradley & Feeney, Sacramento, CA, for Defendants.

## ORDER GRANTING DEFENDANTS' MOTIONS TO DISMISS CLAIMS IN THE FIRST AMENDED COMPLAINT

WARE, District Judge.

### I. INTRODUCTION

Raymond Abels, on behalf of himself and all others similarly situated ("Plaintiffs"), brought an action against JBC Legal Group, Jack Boyajian, and Outsource Resource Management, (collectively, "Defendants"), alleging that Defendants' attempts to collect on his dishonored checks were in violation of the Federal Fair Debt Collection Practices Act 15 U.S.C. §§ 1692 *et seq.* ("federal FDCPA") and California Civil Code § 1788 ("California FDCPA"). Before this Court are Defendants' motions to dismiss.[1] Having read and considered the arguments presented by the parties in their moving papers, the Court finds this matter appropriate for disposition without a hearing. This Court GRANTS Defendants' motions.

### II. BACKGROUND

Plaintiffs' case is based solely upon the contents of two letters ("Letters") that

---

**1.** Defendants JBC and Jack Boyajian filed a motion to dismiss on August 5, 2005. Defendant Outsource Recovery Management ("ORM") filed a virtually identical motion on September 19, 2005. The parties have, and this Court will, address the motions as a single motion to dismiss.

Defendants sent to Plaintiffs, dated April 24, 2004. Defendants sent the Letters in an attempt to collect on two debts from checks written in 1993: check # 775, to "Millers Outpost" for the amount of $105.60, and check # 1033, to "Inland Valley D\* \* \*" for the amount of $654.60. The format and text of each of the Letters are identical with the exception of the check referenced. At the top of each letter is the the the letterhead of "JBC Legal Group, P.C. Attorneys at Law." The letterhead includes the names of two attorneys "of counsel" and their respective bar admissions. The body of the Letters contain the following text in a uniform size and typeface:

> "Full amount of the check(s) and the applicable service charge for each check listed is now due in our office ... California Civil Code Section 1719 provides in part that in the event you do not remit the full amount of each check plus a service charge of $25.00 per check ... within 30 days from receipt of this letter, you may under certain circumstances be subject to additional statutory penalties. The cited statute provides that if you receive a letter by certified mail and fail to remit the total sum due within 30 days of receipt, you may be liable for penalties equal to triple the amount of each check. which [sic] shall not be less than $100.00 nor more than $1500.00 per check, where such penalties would be in addition to your check amount indicated above."

Below the main text is a computer-generated "signature" of Jack Boyajian and, printed underneath, "Jack Boyajian. Esq."

Plaintiffs' complaint alleges a number of claims under the federal FDCPA § 1692 *et seq.* and under the California FDCPA. Defendants filed the instant motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) ("Rule 12(b)(6)"), arguing that with respect to two of Plaintiffs' claims, Plaintiffs fail to state a claim on which relief may be granted.

### III. STANDARDS

Under Rule 12(b)(6), a plaintiff's claims or entire complaint may be dismissed by the court for "failure to state a claim upon which relief can be granted." Rule 12(b)(6). *See, e.g., Jack Russell Terrier Network of N. Cal. v. Am. Kennel Club,* 407 F.3d 1027, 1032 (9th Cir.2005) (affirming district court's partial Rule 12(b)(6) dismissal). A Rule 12(b)(6) motion tests the legal sufficiency of the claims stated in the complaint. The court must decide whether the facts alleged, if true, would entitle plaintiff to some form of legal remedy. Unless the answer is unequivocally in the negative, the motion must be denied. *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957), *De La Cruz v. Tormey,* 582 F.2d 45 (9th Cir.1978). In resolving a Rule 12(b)(6) motion, the court must (1) construe the complaint in the light most favorable to the plaintiff, (2) accept all well-pleaded factual allegations as true, and (3) determine whether plaintiff can prove any set of facts to support a claim that would merit relief. *Cahill v. Liberty Mut. Ins. Co.,* 80 F.3d 336, 337–38 (9th Cir.1996). Because of the liberal federal pleading rules, a 12(b)(6) dismissal is proper only in "extraordinary" cases. *U.S. v. Redwood City,* 640 F.2d 963, 966 (9th Cir.1981).

### IV. DISCUSSION

Defendants seek a dismissal of two of Plaintiffs' many claims.[2] First, Defen-

---

**2.** The parties raise a number of issues in their paper. However, Defendants expressly chose to limit their Motions to Dismiss specifically to these two issues. Should the parties wish

dants contend that Plaintiffs fail to state a claim under the California FDCPA because the checks at issue do not fall under the California FDCPA's limited scope of "credit transactions." Second, Defendants seek to have the Court dismiss Plaintiffs' federal FDCPA claim based on the attempt to collect debts beyond the statute of limitations.

## A. A Dishonored Check is not a "Credit Transaction" within the Meaning of the California FDCPA.

■ Defendants contend that the California FDCPA cause of action fails to state a claim because Plaintiffs have not alleged a "credit transaction" within the meaning of the California FDCPA and cannot do so. Unlike the federal FDCPA, the California FDCPA only applies to debt collectors attempting to collect a debt arising from a "consumer credit transaction." Cal. Civ. Code §§ 1788.13, 1788.17. Plaintiffs' debts arise from checks that were dishonored by their banks. Defendants argue that a dishonored check is not a "credit transaction" as interpreted by the Ninth Circuit. This Court agrees.

While there is no binding authority that reaches the issue of whether a dishonored check is a "consumer credit transaction" within the meaning of the California FDCPA, there is sufficient precedent from the Ninth Circuit to provide guidance to this Court. In 1975, the Ninth Circuit categorized a check as "essentially, an instrument of credit" when interpreting the Federal Fair Credit Reporting Act. *Greenway v. Information Dynamics, Ltd.*, 524 F.2d 1145, 1146 (9th Cir.1975). Two decades later, however, the Ninth Circuit revisited the matter in *Charles v. Lundgren & Associates, P.C.*, 119 F.3d 739 (9th Cir. 1997). In *Charles*, the Ninth Circuit reversed the district court's dismissal of plaintiff's claims. The district court had

reasoned that "the [federal] FDCPA applies only to debts arising out of an offer or extension of 'credit' and that dishonored checks therefore are *not* 'debts' within the statute's meaning." *Id.* at 741 (emphasis added). The Ninth Circuit disagreed, holding that the district court improperly "graft[ed]" a credit requirement to the federal FDCPA. *Id.* at 742. Relying on the Seventh Circuit's opinion in *Bass v. Stolper, Koritzinsky, Brewster & Neider, S.C.* 111 F.3d 1322 (7th Cir.1997), the Ninth Circuit concluded that since there is no credit requirement in the federal FDCPA, the federal FDCPA applies to dishonored checks. Implicit in *Charles* is a holding that a dishonored check would be excluded from the scope of the federal FDCPA by a "credit requirement." The California FDCPA contains a "credit requirement," and thus does not apply to Plaintiffs' dishonored checks.

At oral argument, counsel for Plaintiffs raised an argument that a dishonored check is effectively a "credit transaction" based upon the language in California Commercial Code § 3313 titled "Effect of instrument on obligation for which taken." § 3313(b)(1) states that "in the case of an uncertified check, suspension of the obligation continues until dishonor of the check or until it is paid or certified." Although § 3313 does not discuss the meaning of "credit transactions," Plaintiffs assert that credit transactions are those transactions in which payment is deferred, and therefore an uncertified check such as the one at issue before the Court is a credit transaction falling within the California FDCPA credit limitation. Although recognizing the creativity of Plaintiffs' argument, this Court declines to wedge the dishonored checks at issue into Plaintiff's extrapolation of the meaning of "credit transaction" from the deferral of payment

to resolve other issues, the parties should so move.

provided in California Commercial Code § 3313. The Ninth Circuit has already provided clear guidance on the effect of a "credit transaction" limitation on dishonored checks in *Charles.* Accordingly, Plaintiffs' claims under the California FDCPA are dismissed.

*B.   Defendants' Attempts to Collect on a Time–Barred Debt do not Violate the Federal FDCPA.*

■ The parties agree that the Letters' attempts in 2004 to collect on debts incurred in 1993 were attempts to collect on debts time-barred by the statute of limitations. Defendants seek a dismissal of Plaintiffs' claim that the Letters violated the federal FDCPA by attempting to collect on a time-barred debt. Plaintiffs contend that not only did Defendants' attempt to collect on a time-barred debt, but the Defendants' Letters also threatened litigation in that attempt and in so doing violated the federal FDCPA. The Court disagrees with Plaintiffs' position.

As an initial matter, this Court is persuaded by the reasoning of the Eighth Circuit that an attempt to collect on a time-barred debt *alone* is not a violation of the federal FDCPA. *Freyermuth v. Credit Bureau Services, Inc.,* 248 F.3d 767, 771 (8th Cir.2001) ("in the absence of a threat of litigation or actual litigation, no violation of the [federal] FDCPA has occurred when a debt collector attempts to collect on a potentially time-barred debt that is otherwise valid"). The holding in *Freyermuth* is particularly persuasive because in California, the statute of limitations is an affirmative defense waivable by not being asserted, and as such "a cause of action is not extinguished or impaired by the mere passage of time, and the maintenance of the claim is not precluded simply by the running of the statute of limitations." *Adams v. Paul,* 11 Cal.4th 583, 597, 46 Cal.Rptr.2d 594, 904 P.2d 1205 (1995). In fact, if a defendant does not affirmatively invoke the defense of the statute of limitations, the defense is waived or forfeited. *Minton v. Cavaney,* 56 Cal.2d 576, 15 Cal. Rptr. 641, 364 P.2d 473 (1961). Thus, since the underlying debts are not substantively affected, an attempt to collect on the time-barred debts, standing alone, is not a violation of the federal FDCPA.

Where a collection letter threatens litigation in its attempt to collect on a time-barred debt, however, some courts have found a violation of the federal FDCPA. *See, e.g., Goins v. JBC & Assoc., P.C.,* 352 F.Supp.2d 262 (D.Conn.2005). The court in *Goins* reasoned that even though the statute of limitations is a waivable affirmative defense, "as the statute of limitations would be a complete defense to any suit, however, the threat to bring suit under such circumstances can at best be described as a 'misleading' representation in violation of § 1692e." *Id.* at 272. *See also Perretta v. Capital Acquisitions & Mgmt. Co.,* No. C–02–05561 RMW, 2003 WL 21383757 (N.D.Cal. May 5, 2003).

■ Whether the language of the Letters in this case threatened litigation in violation of the federal FDCPA is determined as a matter of law. *See Terran v. Kaplan,* 109 F.3d 1428, 1432 (9th Cir.1997). In making such a determination, this Court must examine whether the Letters are "likely to deceive or mislead a hypothetical 'least sophisticated debtor.'" *Wade v. Regional Credit Ass'n,* 87 F.3d 1098, 1100 (9th Cir.1996) (quoting *Swanson v. S. Or. Credit Serv., Inc.,* 869 F.2d 1222, 1225 (9th Cir.1988)). The "least sophisticated debtor" standard is objective, but "lower than simply examining whether particular language would deceive or mislead a reasonable debtor." *Swanson,* 869 F.2d at 1229.

Plaintiffs argue that the Letters contained an implicit threat of litigation based on the fact that the letters are on "Attor-

ney at Law" letterhead and include the computer generated signature of an attorney. This Court recognizes that to the least sophisticated debtor, a letter from an attorney is likely to cause concern. *See Jenkins v. Union Corp.*, 999 F.Supp. 1120, 1137 (N.D.Ill.1998) ("in cases where the likelihood of legal action is not clear from the language, the letter's source can be determinative, especially if it purports to be from an attorney"). However, this Court is not willing to extend the holding of *Jenkins* to all attorney attempts to collect on a debt, as Plaintiffs advocate during oral argument, because a reading of the two cases relied on in *Jenkins* reveals that the language of the letter from an attorney must still threaten litigation. *See, e.g., U.S. v. Nat'l Financial Serv., Inc.*, 98 F.3d 131, 134 (4th Cir.1996) (letters from attorney held to threaten litigation included language such as: "I will be compelled to consider the use of legal remedies," "I have filed suits ... on small balance accounts just like yours," "Only your immediate payment will stop further legal action"), *Russey v. Rankin*, 911 F.Supp. 1449, 1454 (D.N.M.1995) (letter purporting to be from an attorney stated "we have the legal right to file a lawsuit" held to clearly threaten litigation).

Courts reaching the specific issue of whether law firm letterhead is sufficient to constitute a violation of § 1692(e)(5) have answered in the negative. *See, e.g., Veillard v. Mednick*, 24 F.Supp.2d 863, (N.D.Ill.1998) ("there is nothing in the letter that refers to legal action and the mere inference that legal action could be taken because the letter is on law firm letterhead is not enough for § 1692e(5) purposes"). In this case, the fact that the Letters are on law firm letterhead and signed by an attorney are insufficient to constitute an implicit threat of litigation which would render an attempt to collect on a time-barred debt in violation of the federal FDCPA. The least sophisticated debtor

would recognize that lawyers perform a multitude of functions in today's society such as drafting wills or closing real estate transactions. At best, the fact that a letter is from an attorney may create a sliding-scale which increases the sensitivity of the debtor to language in the letter threatening litigation—but the examples cited by the Plaintiffs indicate that the threat of litigation must still be present in the content of the collection attempt. Had the Ninth Circuit wished to state that all attorney attempts to collect a debt were to be construed as *per se* threats of litigation regardless of the content of the collection attempt, it would have so stated. Absent an actual threat of litigation in the content of the collection attempt, the mere fact that the Letters are from an attorney is insufficient to be a threat of litigation even to the least sophisticated debtor.

Plaintiffs further argue that the text of the Letters contain an implicit threat of litigation in reciting the penalty provisions under Civil Code 1719 because such a recitation implies that Defendants would attempt enforcement via civil suit. The Ninth Circuit does not construe threats of litigation so broadly as to include debt collection attempts that are merely prudential reminders of the possible consequences of failure to pay. In *Wade*, the plaintiff received a collection letter stating: "If not paid TODAY, it may STOP YOU FROM OBTAINING credit TOMORROW." 87 F.3d at 1099 (capitalization in original). The Ninth Circuit in *Wade* held that the least sophisticated debtor would construe the notice as a prudential reminder, and not a threat to take action. The unpublished case relied upon by Plaintiffs at oral argument, *Perretta*, involves an attempted collection by a law firm through a letter followed by a phone conversation where [h]aving already threatened to report plaintiff's debt to the credit bureaus, defendant told plaintiff that if he did not

"work with" defendant, "further steps would be taken." In *Perretta*, the representative of the law firm, or attorney to the least sophisticated debtor, effectively threatened suit by stating that plaintiff had to cooperate in order to avoid further action from the law firm.

In contrast, the Letters are an effort to seek a voluntary payment by the debtor, and do not contain threats of litigation. The Letters cite to a civil code provision which allows for a thirty-day payment period and warns that Plaintiffs "may under certain circumstances be subject to additional statutory penalties." This Court is unwilling to ignore the sound reasoning of the Ninth Circuit in *Wade* in order to find that a letter citing a statute is the same as one threatening a lawsuit. The language in these Letters clearly do not threaten litigation even to the least sophisticated debtor. Words such as "suit," "action," "case," or "litigation" do not appear in the Letters. There is no indication that litigation is imminent. Rather, the least sophisticated debtor would read the text of the letter as informational in providing a prudential reminder that the debtor may be in violation of a particular civil code provision and that the penalties for such a violation could be serious. Since the text of the Letters do not threaten litigation, Plaintiffs' claim that Defendants violated the federal FDCPA by attempting to collect on a time-barred debt is dismissed.

## V. CONCLUSION

This Court GRANTS Defendants' Motions to Dismiss on the two claims presented. The dismissal on these two claims is with prejudice.