Robert W. DUPUY, Plaintiff,

v.

**WELTMAN, WIENBERG & REIS CO.,** Defendant.

No. C–06–1888 MMC.

United States District Court, N.D. California.

Aug. 7, 2006.

Irving L. Berg, The Berg Law Group, Corte Madera, CA, for Plaintiff.

Stephen H. Turner, Carlson, Messer & Turner LLP, Los Angeles, CA, for Defendant.

## ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS; VACATING HEARING; SCHEDULING CASE MANAGEMENT CONFERENCE

CHESNEY, District Judge.

Before the Court is defendant Weltman, Weinberg, & Reis Co.'s ("WWR") motion, filed April 25, 2006, to dismiss, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, plaintiff Robert Dupuy's ("Dupuy") complaint. Dupuy has filed opposition, to which WWR has replied. Having considered the papers filed in support of and in opposition to the motion, the Court

finds the matter appropriate for decision on the papers, VACATES the hearing set for June 9, 2006, and rules as follows.

## BACKGROUND

Dupuy alleges he incurred a "debt" to Bank of America, which sold his "account" to Sherman Acquisition ("Sherman"). (*See* Compl. ¶¶ 6–7.) According to Dupuy, Sherman assigned the debt collection to WWR and, thereafter, WWR sent two letters to Dupuy in furtherance of the debt collection. (*See* Compl. Exs. A ("March letter") & C ("April letter").) Both the March and April letters were printed on the following letterhead: "Law Offices of Weltman, Weinberg & Reis Co., L.P.A." *Id.* The March letter was signed by Julie A. Vaccarelli ("Vaccarelli"); the April letter was signed by Stanley Green ("Green"). *Id.* Dupuy alleges the language employed in WWR's letters gives rise to claims under the Fair Debt Collection Practices Act ("FDCPA"), *see* 15 U.S.C. §§ 1692–1692o, and the Robbins–Rosenthal Fair Debt Collection Practices Act ("RR FDCPA"), *see* California Civil Code § 1788.

## LEGAL STANDARD

A motion to dismiss under Rule 12(b)(6) cannot be granted unless "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *See Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). Dismissal can be based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory. *See Balistreri v. Pacifica Police Dep't,* 901 F.2d 696, 699 (9th Cir.1988). In analyzing a motion to dismiss, the court must accept as true all material allegations in the complaint and construe them in the light most favorable to the nonmoving party. *See NL*

*Industries, Inc. v. Kaplan,* 792 F.2d 896, 898 (9th Cir.1986).

## DISCUSSION

The FDCPA prohibits debt collectors from making false or misleading statements in the course of attempting to collect a debt. *See Wade v. Reg'l Credit Ass'n,* 87 F.3d 1098, 1099 (9th Cir.1996) (noting Congress enacted FDCPA to combat "use of abusive, deceptive, and unfair debt collection practices"). Likewise, the RR FDCPA prohibits such statements, by requiring compliance with the substantive provisions of the FDCPA. *See* Cal. Civ. Code § 1788.17 (providing debt collectors must comply with FDCPA). "Whether language employed in connection with the collection of debt violates the FDCPA is a question of law for the court to decide." *Van Westrienen v. Americontinental Collection Corp.,* 94 F.Supp.2d 1087,1099 (D.Or.2000) (citing *Terran v. Kaplan,* 109 F.3d 1428, 1432–1433 (9th Cir.1997)). In considering whether a statement in a debt collection letter is false or misleading, a district court applies "the least sophisticated debtor" standard. *See Wade,* 87 F.3d at 1100. Under that standard, if the court finds the least sophisticated debtor "would likely be misled" by a debt collection letter, the court "must hold the [defendant] has violated the [FDCPA]." *See Swanson v. Southern Oregon Credit Serv.,* 869 F.2d 1222, 1225 (9th Cir.1988).

Dupuy alleges that WWR's letters violate the FDCPA and the RR FDCPA in four different ways: (1) the letters falsely represent attorney involvement in the collection letters, in violation of 15 U.S.C. § 1692e, e(3) and e(10); (2) the letters imply a threat of litigation that WWR did not intend to initiate, in violation of § 1692e(5); (3) the April letter fails to set forth the true amount of the debt, in violation of § 1692g(a)(1); and (4) the April

letter includes a false settlement offer, in violation of § 1692e(10) and 1692f. (*See* Compl. ¶¶ 18–21).[1] In its motion, WWR argues its letters are straightforward, non-deceptive, and non-coercive communications that do not contain false or misleading statements.

## A. False Representation of Attorney Involvement

■ Under the FDCPA, "[a] debt collector may not use false or misleading representations," including "[t]he false representation or implication that any individual is an attorney or that any communication is from an attorney." *See* 15 U.S.C. § 1692e(3).

Dupuy alleges that WWR's collection letters are "false[,] deceptive, and misleading as being from an attorney because no attorney had any meaningful involvement in reviewing [p]laintiff's file or discussing resolution of the matter." (*See* Compl. ¶ 12.) According to Dupuy, WWR, which is "staffed with teams of lay-collectors," (*see id.* ¶ 10), "did not have sufficient information about the account for [WWR] to reach an independent professional judgment about liability and collectibility," (*see id.* ¶ 13). In its motion, WWR argues the letters "clearly do not represent to have been signed by an attorney," and thus "there is no false implication that an attorney formed an opinion or was meaningfully involved." (*See* Def.'s Mot. to Dismiss p. 6.)[2]

Interpreting 15 U.S.C. § 1692e(3), the Second Circuit has held that the use of an attorney's "letterhead and signature on the collection letters [is] sufficient to give the least sophisticated consumer the impression that the letters [are] communications from an attorney." *See Clomon v. Jackson*, 988 F.2d 1314, 1320–21 (2d Cir.1993) (holding use of attorney's signature implies "attorney signing the letter formed an opinion about how to manage the case of the debtor to whom the letter was sent.") More recently, the Second Circuit has held "a letter sent on law firm letterhead, standing alone, does represent a level of attorney involvement to the debtor receiving the letter," in the absence of a disclaimer therein that an attorney was not so involved. *See Greco v. Trauner, Cohen & Thomas, L.L.P.*, 412 F.3d 360, 364–65 (2d Cir.2005). Other circuit and district courts are in accord with the Second Circuit's interpretation of § 1692e(3). *See, e.g., Avila v. Rubin*, 84 F.3d 222, 229 (7th Cir. 1996) (holding "attorney's signature implies the attorney has formed a professional judgment about the debtor's case"); *Masuda v. Richards & Co.*, 759 F.Supp. 1456, 1460–61 (C.D.Cal.1991) (same).

Although WWR's letters do not explicitly state they are signed by an attorney, both letters are printed on WWR's letterhead and state WWR is a law firm attempting to collect on "this debt" or "this account." (*See* Compl. Exs. A, C.) Given that the letters do not state that the signatories have a title other than that of an attorney and do not include a statement that an attorney was not involved in the matter, it is reasonable for the recipient to infer an attorney was involved, and cer-

---

1. In alleging his claims, Dupuy does not identify any particular section(s) of the RR FDCPA that WWR has violated. As noted, however, the RR FDCPA incorporates the substantive provisions of the FDCPA. Accordingly, the Court's discussion of Dupuy's FDCPA claims applies equally to Dupuy's RR FDCPA claims. *See, e.g., Hosseinzadeh v. M.R.S. Assocs.*, 387 F.Supp.2d 1104, 1118 (C.D.Cal.2005) (holding where defendant violates FDCPA, defendant likewise violates RR FDCPA).

2. In its initial disclosures, WWR concedes that the signatories, Vaccarelli and Green, are attorneys. (*See* Def.'s Initial Disclosures, filed June 1, 2006, at 2:14–19.)

tainly the least sophisticated debtor would infer that an attorney was involved. *See Greco*, 412 F.3d at 364–65.

Accordingly, WWR has not shown it is entitled to dismissal of Dupuy's claims to the extent such claims are based on WWR's having made an implicit representation of attorney involvement.

## B. Implied Threat of Action Not Intended to be Taken

A false or misleading representation under the FDCPA includes a "threat to take any action that cannot legally be taken or that is not intended to be taken." *See* 15 U.S.C. § 1692e(5). A violation of § 1692e(5) occurs where "(1) a debtor would reasonably believe that the notices threaten legal action; and (2) the debt collector does not intend to take legal action." *See United States v. Nat'l Fin. Servs., Inc.*, 98 F.3d 131, 135 (4th Cir. 1996).

■ In the instant complaint, Dupuy alleges WWR used "the authority and weight of its marquee attorney letterhead" to contact "those consumers who would be intimidated by a collection letter from an attorney or believe [WWR's] implied threat that litigation was imminent." (*See* Compl. ¶ 8.)[3] In its motion, WWR argues its letters do not include an implied threat of litigation.

In determining whether a debt collector has implicitly threatened litigation, courts focus on the specific language in the debt collector's communication to the debtor. For example, where the least sophisticated debtor would construe language in a letter as no more than a "prudential reminder" that a debt is outstanding, the letter does not include an implied threat of litigation. *See Wade*, 87 F.3d at 1099, 1100 (holding statements "[i]f not paid today, [the debt] may stop you from obtaining credit tomorrow" and that debtor's "credit may be adversely affected" would be understood by least sophisticated debtor as prudential reminder of debt and not implicit threat of litigation); *see also Abels v. JBC Legal Group*, 428 F.Supp.2d 1023, 1028–29 (N.D.Cal.) (holding statement that debtor's failure to remit payment within thirty days may subject recipient to additional "statutory penalties" would not be understood by least sophisticated debtor as threat of litigation). By contrast, courts have held that a debt collection letter includes an implicit threat of litigation when it refers to the possibility of litigation. *See, e.g., Nat'l Fin. Servs., Inc.*, 98 F.3d at 134 (holding statements "I am the collection attorney"; "I have the authority to see that suit is filed against you"; and "I will be compelled to consider the use of legal remedies" would be understood by least sophisticated debtor as implied threats of litigation); *Russey v. Rankin*, 911 F.Supp. 1449, 1454 (D.N.M.1995) (holding statement defendant had "legal right to file a lawsuit" would be understood by least sophisticated debtor as implicit threat of litigation).

Here, Dupuy's complaint does not identify any language in either letter that implies a threat of litigation; rather, the complaint, as noted, refers to WWR's use of its letterhead. (*See* Compl. ¶ 8.) The use of a law firm letterhead has been found insufficient by itself to imply a threat of litigation; as stated by one district court, "the mere inference that legal action could be taken because the letter is

---

3. Dupuy further alleges WWR did not intend to take legal action. (*See* Compl. ¶ 9.) According to Dupuy, WWR "would not sue a debtor that resided in California, because [WWR] was not licensed to practice law in California" and WWR was only retained "to send collection letters." (*See id.*)

on law firm letterhead is not enough for § 1692e(5) purposes." *See Veillard v. Mednick*, 24 F.Supp.2d 863, 867 (N.D.Ill. 1998); *see also Abels*, 428 F.Supp.2d at 1028 (same). The Court agrees.

■ In his opposition, Dupuy asserts one of WWR's statements in the March letter, specifically, "this law firm has been retained to collect the outstanding balance due and owing on this account," constitutes a threat of suit. (*See* Compl. Ex. A; Pl.'s Opp. at 6:11–13.) The Court disagrees. Such language does not compare to language courts have found would cause the least sophisticated debtor to believe the defendant was threatening litigation. *See, e.g., Nat'l Fin. Servs., Inc.*, 98 F.3d at 134; *Russey*, 911 F.Supp. at 1454.

Accordingly, WWR is entitled to dismissal of Dupuy's claims to the extent such claims are based on WWR's having made an implicit threat to take legal action.

## C. Amount of Debt

Pursuant to 15 U.S.C. § 1692g,

[w]ithin five days after the initial communication with a consumer in collection of any debt, a debt collector shall, unless the [ ] information is contained in the initial communication or the consumer has paid the debt, send the consumer a written notice containing . . . the amount of the debt.

*See* 15 U.S.C. § 1692g(a)(1).

■ Dupuy alleges WWR's April letter fails to set forth the amount of the debt, in violation of 15 U.S.C. § 1692g(a)(1). (*See* Compl. ¶¶ 14, 20.) In its motion, WWR argues that "[t]he language in both letters is accurate and would not confuse a 'least sophisticated consumer' as to the amount specifically owed." (*See* Def.'s Mot. to Dismiss at 8:11–12.)

Section 1692g(a)(1) requires debt collectors "to state the total amount due—inter-est and other charges as well as principal—on the date the dunning letter was sent." *See Miller v. McCalla*, 214 F.3d 872, 875 (7th Cir.2000). Additionally, a debt collection letter "must state [the amount of the debt] clearly enough that the recipient is likely to understand it." *See Chuway v. Nat'l Action Fin. Servs., Inc.*, 362 F.3d 944, 948 (7th Cir.2004). Statements required by § 1692g(a) "must not be overshadowed or contradicted by other messages." *See Nat'l Fin. Servs., Inc.*, 98 F.3d at 139.

WWR's March letter states, above the salutation, "Balance Due as of March 9, 2005: $7353.31," and, in the first paragraph, "As of the date of this letter you owe the amount listed above." (*See* Compl. Ex. A.) The April letter states, above the salutation, "Balance Due: $7353.31" and, in the first paragraph, "The balance listed above may change daily if interest is accruing." (*See* Compl. Ex. C.) Dupuy asserts the April letter violates § 1692g(a)(1) because it refers to the possibility of interest accruing without stating whether interest is in fact accruing, and, if interest is accruing, the amount of interest due on the date the April letter was sent.

In its "initial communication," *see* 15 U.S.C. § 1691g(a), specifically, the March letter, WWR does state the balance due as of the date of that letter. (*See* Compl. Ex. A.) Additionally, the balance due as set forth in the April letter, specifically, $7353.31, is the identical amount identified in the March letter, thus arguably suggesting that no interest had accrued. As noted, however, the April letter states, in effect, that interest may be accruing. Such language, from the perspective of the least sophisticated debtor, could well "overshadow" and/or "contradict" the statements made in the March letter as to the amount ultimately due. *See Nat'l Fin. Servs.*, 98 F.3d at 139. Further, if in fact

interest was accruing, the April letter did not disclose the amount of any interest owed as of the date the letter was sent.[4]

Accordingly, WWR has not shown it is entitled to dismissal of Dupuy's claims to the extent such claims are based on the manner in which WWR disclosed the amount of debt in the April letter.

### D. False and Misleading Settlement Offer

Under the FDCPA, a "false or misleading" representation includes "[t]he use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer." *See* 15 U.S.C. § 1692e(10). More generally, the FDCPA provides: "A debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt." *See* 15 U.S.C. § 1692f.

■ The April letter states, "Please be advised that our client has authorized us to accept 50% of the total balance due as settlement of this claim. This authorization is good for fifteen (15) days from the date of this letter." (*See* Compl. Ex. C). Dupuy alleges this language constitutes a "false limited time settlement offer," (*see id.* ¶ 21), because Sherman, WWR's client, "would have accepted 50% of the amount claimed or less at any time," (*see id.* ¶ 15). WWR argues the April letter "merely sets forth the terms of the settlement offer" and does not state such offer is "a one time or final offer." (*See* Def's Mot. to Dismiss

at 12:15–16.) In his opposition, Dupuy offers no response to WWR's argument, other than to note he has alleged a claim that the settlement offer in the April letter is "false." (*See* Pl.'s Opp. at 4:1–2.)

■ Where a debt collection letter contains an offer to settle by a specified date and makes it appear therein that such offer is a "one-time, take-it-or-leave-it offer," when in fact the debt holder is prepared to make other offers after the expiration date, the letter contains a false statement within the meaning of the FDCPA. *See Goswami v. American Collections Enterprise, Inc.*, 377 F.3d 488, 495–96 (5th Cir.2004) (holding statement "only during the next thirty days, will our client agree to settle" to be false and misleading where client would have settled after specified 30–day period). By contrast, where a settlement offer of stated limited duration is unaccompanied by any language implying that the offer is a one-time offer, the offer is not false within the meaning of the FDCPA. *See, e.g., Gully v. Van Ru Credit Corp.*, 381 F.Supp.2d 766, 768–72 (N.D.Ill.2005) (finding no violation where letter stated, "[w]e are authorized to settle your account with the above client which, as of the date of this letter, is $796.87 for the sum of $318.75, provided this sum is received by [defendant] by November 11, 2003" and "[t]he offer automatically will be revoked if your payment is not received by November 11, 2003"); *Hernandez v. AFNI, Inc.*, 428 F.Supp.2d

---

4. As explained in *Miller*, "where the amount varies from day to day" a defendant can satisfy § 1692g(a)(1) by using "safe harbor" language similar to the following: "As of the date of this letter, you owe $ [the exact amount due]. Because of interest, late charges, and other charges that may vary from day to day, the amount due on the day you pay may be greater. Hence, if you pay the amount shown above, an adjustment may be necessary after we receive your check, in

which event we will inform you before depositing the check for collection. For further information, write the undersigned or call 1–800–[phone number]." *See Miller*, 214 F.3d at 876. Although WWR argues, in summary fashion, that its letters contain language sufficient to fall within the "safe harbor" language approved in *Miller*, neither letter sent to Dupuy contains language even remotely similar to the above-quoted notice.

776, 777, 783 (N.D.Ill.2006) (finding no violation where letter stated defendant would "close the account upon receipt of $78.25" and that "[t]his offer is only valid if funds are received or secured no later than 11/14/04").

Here, the settlement offer falls well within the second category. As the court observed in *Hernandez*, there is a distinction between "a collector's letter making a onetime offer, as in *Goswami*, and a letter stating that the *current offer* is subject to expiration without indicating anything about the possibility of future offers." *See id.* at 781 (emphasis added). To hold otherwise would effectively preclude settlements of claims against unrepresented debtors, as the debt collector would be given a Hobson's choice of either (1) making an offer that is open-ended in duration, a commercially impractical position, or (2) including an expiration date but expressly announcing to the debtor that once such date has passed, a better offer will be forthcoming.

Accordingly, WWR is entitled to dismissal of Dupuy's claims to the extent such claims are based on WWR's having falsely represented the nature of the terms of the settlement offer in the April letter.

## CONCLUSION

For the reasons stated above, WWR's motion to dismiss is hereby GRANTED in part and DENIED in part, as follows:

1. To the extent Dupuy's claims are based on the allegation that the collection letters contain implied threats to take legal action not intended to be taken and that the settlement offer in the April letter is false and misleading, the motion is GRANTED and such claims are hereby DISMISSED.

2. In all other respects, the motion is DENIED.

3. A case management conference is hereby SCHEDULED for September 1, 2006, at 10:30 a.m., Courtroom 7. A joint case management statement shall be filed no later than August 25, 2006.

**IT IS SO ORDERED.**