**Damaris CRUZ, individually and on behalf of all others similarly situated, Plaintiff,**

**v.**

**MRC RECEIVABLES CORP.; Midland Credit Management, Inc.; A. Syran, an individual, Defendants.**

No. C–07–5688 SC.

United States District Court, N.D. California.

July 3, 2008.

Irving L. Berg, The Berg Law Group, Corte Madera, CA, for Plaintiff.

Tomio Buck Narita, Jeffrey A. Topor, Simmonds & Narita LLP, San Francisco, CA, for Defendants.

*ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND DENYING PLAINTIFF'S CROSS MOTION FOR PARTIAL SUMMARY JUDGMENT*

SAMUEL CONTI, District Judge.

## I. *INTRODUCTION*

Plaintiff Damaris Cruz brought this putative class action suit alleging violations of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq. See* Compl., Docket No. 1. Defendants MRC Receivables Corp. ("MRC"), Midland Credit Management, Inc. ("Midland"), and James Alexander Syran ("Syran"; together with MRC and Midland, "Defendants") brought this Motion for Summary Judgment ("Motion"). Docket No. 16. Cruz opposed the Motion and moved for partial summary judgment on the issue of liability. Docket No. 20. Defendants filed a reply in support of their Motion and in opposition to Cruz's motion. Docket No. 24. Having considered the facts and the parties' legal arguments, the Court

GRANTS Defendants' Motion and DENIES Plaintiff's motion.

## II. *BACKGROUND*

Plaintiff signed up for a credit card through Union Privilege and HSBC in August 2001. Approximately one year later, she was unable to pay HSBC the balance due. At that time, Plaintiff claims, HSBC notified her that it would submit a negative report to the credit bureau.[1] Declaration of Damaris Cruz, Docket No. 21, ¶¶ 5–7 ("Cruz Decl."). Plaintiff attached to her declaration a portion of her Experian credit report purportedly demonstrating that HSBC filed a negative report on her account in June 2002. *Id.* Ex. A.

Plaintiff believes that HSBC subsequently sold Plaintiff's account to Defendant MRC in or around October 2004 and that MRC appointed Midland to collect the outstanding debt. *Id.* ¶¶ 8, 9. According to Plaintiff's Complaint, Midland filed a negative report with the credit bureau in March 2007. Compl. ¶ 17.

On April 11, May 23, and July 4, 2007, Midland sent Plaintiff collection notices, offering to settle her debt in full in exchange for immediate payment of a portion of the outstanding balance. *Id.* Exs. A, C, E. Each letter closes with the typewritten text:

Sincerely,

A. Syran

Senior Vice President, Operations & Marketing

*See id.* Exs. A, C, E. On the reverse side of each letter, Midland included the following notice:

As required by law, you are hereby notified that a negative report reflecting on your credit record may be submitted to

---

1. Defendants object to certain portions of Cruz's declaration and to the excerpts from her credit reports attached as exhibits to the declaration. *See* Docket No. 25. The Court addresses these objections below.

a credit-reporting agency if you fail to fulfill the terms of your credit obligations.

*See id.* Exs. B, D, F.

Syran is the Senior Vice President, Operations and Marketing, for Midland. Declaration of James Alexander Syran, Docket No. 17, ¶ 1 ("Syran Decl."). According to Syran, Midland sends form settlement letters to its customers, offering to settle debts for less than the full amount due. *Id.* ¶ 2. Syran approved the use of his typewritten name and title on Midland's form settlement letters. *Id.* ¶¶ 3, 4. Syran reviewed the letters Midland sent to Plaintiff. *Id.* ¶ 5. According to Syran, the letters accurately reflect the terms of Midland's settlement offers, and Midland would have honored the terms if Plaintiff had accepted any of the offers. *Id.*

Plaintiff filed this suit claiming that the letters she received from Midland violated the FDCPA because Syran's name and title appeared on the letters even though he did not actually write the letters himself, and because the letters warned of a possible negative report to the credit-reporting agencies, even though such a report had already been made and was no longer required by law.

### III. *LEGAL STANDARD*

Entry of summary judgment is proper "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c).[2] "Summary judgment should be granted where the evidence is such that it would require a directed verdict for the moving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106

S.Ct. 2505, 91 L.Ed.2d 202 (1986). Thus, "Rule 56(c) mandates the entry of summary judgment ... against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). In addition, entry of summary judgment in a party's favor is appropriate when there are no material issues of fact as to the essential elements of the party's claim. *Anderson,* 477 U.S. at 247–49, 106 S.Ct. 2505.

A party moving for summary judgment on an issue where it does not have the ultimate burden of persuasion at trial may satisfy its initial burden of production in one of two ways. "The moving party may produce evidence negating an essential element of the nonmoving party's case, or, after suitable discovery, the moving party may show that the nonmoving party does not have enough evidence of an essential element of its claim or defense to carry its ultimate burden of persuasion at trial." *Nissan Fire & Marine Ins. Co. v. Fritz Cos.,* 210 F.3d 1099, 1106 (9th Cir.2000). "Once the moving party carries its initial burden, the adverse party 'may not rest upon the mere allegations or denials of the adverse party's pleading,' but must provide affidavits or other sources of evidence that 'set forth specific facts showing that there is a genuine issue for trial.' " *Devereaux v. Abbey,* 263 F.3d 1070, 1076 (9th Cir.2001) (quoting Fed.R.Civ.P. 56(e)(2)).

### IV. *EVIDENTIARY ISSUES*

Defendants object to paragraphs 5–12 of Cruz's declaration and to the credit report

---

**2.** Defendants' brief incorrectly quotes the previous text of Rule 56(c). The language of Rule 56 was amended, effective December 1, 2007. The changes were intended to be stylistic only. *See* Fed.R.Civ.P. 56 advisory committee's note.

excerpts attached to it. *See* Docket No. 25 ("Obj."). "It is well settled that only admissible evidence may be considered by the trial court in ruling on a motion for summary judgment." *Beyene v. Coleman Sec. Servs., Inc.,* 854 F.2d 1179, 1181 (9th Cir.1988) (citing Fed.R.Civ.P. 56(e)). Defendants argue that the evidence Cruz submitted, including the majority of her declaration, is inadmissible because it is hearsay, lacks foundation, and contains speculation. *See* Obj. Cruz did not respond to Defendants' objections.

Hearsay is an out-of-court statement offered to prove the truth of the matter asserted. Fed. R. Ev. 801(c). Hearsay is not admissible evidence unless it falls into one of a limited number of exceptions defined in the Federal Rules of Evidence. Fed. R. Ev. 802; *see also* Fed. R. Ev. 803, 804.

■ Exhibit A to the Cruz Declaration, an excerpt from her Experian credit report dated February 8, 2008, is inadmissible hearsay. Cruz offers Exhibit A to prove that HSBC filed a negative credit report with Experian regarding Cruz's delinquent account. For example, Cruz states in her declaration, "In reviewing my credit report, attached hereto as Exhibit A, HSBC reported the account as charged off as of June 2002 to April 2003." Cruz Decl. ¶ 6. Cruz is not an employee of either HSBC or Experian, and provides no foundation that would support allowing this document into evidence under any of the exceptions to the hearsay rule. *See Baker v. Capital One Bank,* No. 04–1192, 2006 WL 173668, at *6–7, 2006 U.S. Dist. LEXIS 2625, at *15–17 (D.Ariz. Jan. 24, 2006) (citing *Beyene,* 854 F.2d at 1183 n. 4).

■ For the same reasons that Exhibit A is inadmissible, paragraphs 5, 6, 8, 9, and 10 of Cruz's declaration are also inadmissible. Paragraph 5 relates to an out of court statement purportedly made by

HSBC, a non-party, that a negative report might be filed. Cruz Decl. ¶ 5. Such a statement is inadmissible. *See Baker,* 2006 WL 173668 at *6–7, 2006 U.S. Dist. LEXIS 2625 at *16–17 (excluding affidavit testimony based on inadmissible Experian credit report). Paragraph 6, quoted above, offers information from the inadmissible credit report excerpt as proof that HSBC filed a negative report. Cruz Decl. ¶ 6. In paragraph 8, Cruz states, "The credit report also shows that the account 'was purchased by another lender.' I believe that reference to another lender is reference to MRC Receivables Corp." *Id.* ¶ 8. As with paragraph 6, this is simply a quotation from an inadmissible document, followed by Cruz's unfounded speculation as to the meaning of the quotation. Nothing in Exhibit A refers to MRC. In paragraph 9, Cruz attempts to provide foundation for the assertion that MRC purchased her account by comparing Exhibit A to the letters she received from Defendants. *Id.* ¶ 9. However, Exhibit A is itself inadmissible, and nothing in paragraph 9 that is not taken from Exhibit A provides an additional basis for Cruz's assertions. Finally, paragraph 10 asserts that HSBC made statements comparable to the notices contained on the collection letters Cruz received from Defendants. *Id.* ¶ 10. As with paragraph 5, HSBC's purported statement is inadmissible hearsay.

Exhibit B to the Cruz Declaration, an excerpt from her TransUnion credit report dated February 8, 2008, is inadmissible hearsay. Like Exhibit A, Exhibit B is an out-of-court statement made by a non-party (TransUnion), which Cruz offers to prove that Defendants filed a negative credit report on her account. Cruz provides no foundation for admission of this document under any of the exceptions to hearsay defined in the Federal Rules of Evidence. *See Capital Funding, VI, Inc.*

*v. Chase Manhattan Bank*, No. 01–6093, 2005 WL 352697, at *2, 2005 U.S. Dist. LEXIS 2212, at *5–6 (E.D.Pa. Feb. 11, 2005) (exclusion of TransUnion credit report appropriate where Plaintiff did not offer testimony of qualified witness to authenticate its contents pursuant to Federal Rule of Evidence 803(6)).

Paragraph 12 of Cruz's declaration contains her interpretation of the inadmissible credit report she offered as Exhibit B. *See* Cruz Decl. ¶ 12. As Cruz does not claim to be an employee of either TransUnion or MRC, she has no foundation for these assertions. *See Baker*, 2006 WL 173668 at *6–7, 2006 U.S. Dist. LEXIS 2625 at *16–17. Based on two quotations from the inadmissible TransUnion report, Cruz also asserts as a fact that the credit reporting notices included in the collection letters she received were false. *See* Cruz Decl. ¶ 12(B), 12(C). The falsity of the collection letters is the very question the Court must answer in ruling on the instant motions. The Court will not substitute Cruz's legal opinion for its own.

For the foregoing reasons, Defendants' objections to Exhibits A and B and paragraphs 5, 6, 8, 9, 10, and 12 of the Cruz Declaration are sustained. Those portions of the Cruz Declaration are stricken. The Court will not consider this evidence in ruling on the instant motions. *Beyene*, 854 F.2d at 1181.

Paragraphs 7 and 11 of Cruz's declaration state that she ordered the credit reports contained in Exhibits A and B from Experian and TransUnion. *See* Cruz Decl. ¶¶ 7, 11. Defendants object to these paragraphs as hearsay and speculation. The objections are overruled. Neither paragraph contains an out-of-court statement or speculation of any kind. Each merely serves to authenticate one of the exhibits. As the exhibits in question are inadmissi-

ble for other reasons, these statements have little impact.

## V. *DISCUSSION*

Cruz argues that the use of Syran's name on the letters from Midland violates 15 U.S.C. §§ 1692e and 1692f. Cruz also argues that including the notice of a possible negative report to the credit-reporting agencies violates the same statutory provisions. The Court disagrees.

### A. *Statutory Framework*

The FDCPA states that a "debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt." 15 U.S.C. § 1692e. The statute then provides a non-exclusive list of prohibited practices, two of which Cruz claims Defendants committed. The first is "[t]he use or distribution of any written communication which . . . creates a false impression as to its source, authorization, or approval." *Id.* § 1692e(9). The second is the "use of any false representation or deceptive means to collect or attempt to collect any debt. . . ." *Id.* § 1692e(10). Under 15 U.S.C. § 1692f, "A debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt." Like section 1692e, section 1692f includes a non-exclusive list of prohibited practices. Plaintiff argues that Defendants violated section 1692f, but does not identify specific conduct listed in the statute.

The Court uses a "least sophisticated debtor" standard in evaluating FDCPA claims. *Wade v. Reg'l Credit Ass'n*, 87 F.3d 1098, 1100 (9th Cir.1996). "Although this standard is objective, the standard is lower than simply examining whether particular language would deceive or mislead a reasonable debtor." *Swanson v. S. Or. Credit Serv., Inc.*, 869 F.2d 1222, 1227 (9th Cir.1988). The Court must balance this

debtor-friendly framework by protecting legitimate debt collectors from unreasonable interpretations of collection letters. *Clomon v. Jackson*, 988 F.2d 1314, 1320 (2d Cir.1993) (the FDCPA "(1) ensures the protection of all consumers, even the naive and the trusting, against deceptive debt collection practices, and (2) protects debt collectors against liability for bizarre or idiosyncratic interpretations of collection notices."); *White v. Goodman*, 200 F.3d 1016, 1020 (7th Cir.2000) ("Any document can be misread. The Act is not violated by a dunning letter that is susceptible of an ingenious misreading, for then every dunning letter would violate it. The Act protects the unsophisticated debtor, but not the irrational one."); *Wan v. Commercial Recovery Sys., Inc.*, 369 F.Supp.2d 1158, 1162 (N.D.Cal.2005).

## B. *Use of Syran's Name and Title*

In her Opposition, Plaintiff argues that "it is deceptive and misleading to the consumer to state or imply that a high-ranking officer of the company was sending Plaintiff a collection notice when that person had nothing to do with it." Opp'n at 6. Plaintiff further asserts that the use of Syran's name and title in the collection letters violates the general prohibition of section 1692e, as well as the specific prohibitions of sections 1692e(9) and 1692e(10). *See id.* at 7.

As an initial matter, the Court notes that Cruz offered no admissible evidence whatsoever supporting her claim that Syran was not personally involved in the letters. Although the letters are form letters, Syran read them, agrees that Defendants would abide by their terms, and approved of the use of his name. *See* Syran Decl. ¶¶ 4, 5. Syran's uncontested testimony satisfies Defendants' burden at this stage, obliging Cruz to produce evidence in response. *See Nissan Fire &*

*Marine*, 210 F.3d at 1107; Fed.R.Civ.P. 56(e)(2). Cruz's failure to produce such evidence is sufficient basis for the Court to grant Defendants' Motion. *See Devereaux*, 263 F.3d at 1076; *Baker*, 2006 WL 173668 at *6–7, 2006 U.S. Dist. LEXIS 2625 at *18–19 (granting motion for summary judgment where plaintiff offered no evidence other than inadmissible credit report and related testimony).

Even if Cruz had submitted evidence demonstrating Syran's lack of involvement, the Court's conclusion would be no different. The purported statutory violations here are premised on the same notion— that the least sophisticated consumer would see Syran's name and believe that a senior executive had sent the letter personally, falsely implying that the letter was therefore more important and urgent than a regular collections letter. The Court disagrees with the premise.

The Court reads each letter in its entirety to determine whether it is misleading or deceptive. *See, e.g., Peter v. GC Servs. L.P.*, 310 F.3d 344, 349 (5th Cir. 2002) ("When the letter is read as a whole, however, we conclude that these lines do not misrepresent, contradict, or overshadow the language explaining plaintiff debtor's statutory rights."); *McStay v. I.C. Sys., Inc.*, 308 F.3d 188, 191 (2d Cir.2002) ("when the letter here is read in its entirety, it contains no contradiction and creates no reasonable confusion...."). Upon review of the letters in question, the Court finds that even the least sophisticated debtor would not believe that Syran had personally reviewed the debtor's account and authored the letter. Even if such a debtor did believe Syran had authored the letter, that alone would not be sufficient basis for concluding that the letter was therefore more important than it might otherwise appear. The letters are quite obviously form letters, and the Court be-

lieves this would be clear even to the least sophisticated debtor. Each letter contains a letter code, a "tear off" portion to be returned with payment, a bar code, a toll-free telephone number, Midland's hours of operation, and displays Plaintiff's account number in multiple places. *See, e.g.,* Compl. Ex. A. Further, the letters have Midland's logo and return address at the top of the page, rather than Syran's name, and the "Acceptance Certificate" attached to the letter has Midland's mailing address, not Syran's name. *Id.* The actual text of the letter demonstrates that it is Midland, rather than merely Syran, making the settlement offer to Plaintiff. *See id.* ("settlement opportunity offered to you by Midland Credit Management," "we would like to offer you a positive and flexible option," "any of our Account Managers will be able to assist you"). By contrast, there is nothing else in any of the letters to support Plaintiff's interpretation.

As legal support for her position, Plaintiff points the Court to the decision in *Campuzano–Burgos v. Midland Credit Management,* 497 F.Supp.2d 660 (E.D.Pa. 2007) (*"Campuzano"*). The plaintiff in *Campuzano* took the same position Cruz takes here, that the name of a Midland executive on a form letter violates the FDCPA, and the court agreed:

> Here, the use of top executives of the company as signatories is likely meant to impress upon debtors the seriousness of the communication and will almost certainly have such an effect on at least some debtors. Because the parties have stipulated that those executives did not review plaintiffs' cases, and because the signature of an executive, no less than the signature of an attorney, conveys that the executive had *some* actual involvement in the decision to send the letter to a particular debtor, we find that the letters here are deceptive and mis-

leading within the meaning of section 1692e.

*Id.* at 665 (emphasis in original). The *Campuzano* court based its conclusion in part on a comparison between executives and attorneys:

> But a lawyer is not the only figure who can get the debtor's knees knocking. An escalation from a lowly collection agent to a senior executive of the company could similarly demonstrate to a consumer that the debt collector means business. It is, of course, no accident that MCM used the names *and* titles of its executives on the collection letters at issue here. They expect, either based on research they may have conducted or just as a matter of common sense, that a title such as "President" or "Executive Vice President" connotes authority and is more likely to generate a response.

*Id.* at 663 (emphasis in original). However, there is a specific prohibition in the FDCPA against "[t]he false representation or implication that any individual is an attorney or that any communication is from an attorney." 15 U.S.C. § 1692e(3). No such prohibition exists for letters from non-attorney executives. Further, the court in *Campuzano* relied on the Second Circuit's decision in *Clomon, supra,* for the proposition that " 'The use of an attorney's signature on a collection letter implies that the letter is 'from' the attorney who signed it; it implies, in other words, that the attorney directly controlled or supervised the process through which the letter was sent.' " *Campuzano,* 497 F.Supp.2d at 663 (quoting *Clomon,* 988 F.2d at 1321). In *Clomon,* however, the attorney's signature was the basis for the court's holding that the collection letter violated section 1692e(3), not section 1692e(10). *Clomon,* 988 F.2d at 1321. The violation of section 1692e(10) was based on other specific statements in the letter:

The letters stated that Jackson was "suggesting" certain measures be taken "to further implement the collection of your seriously past due account"; that Jackson had received 'instructions' from his client "to pursue this matter to the furthest extent we deem appropriate"; that Jackson had 'told' his client that it could "lawfully undertake collection activity to collect your debt"; and that Jackson had "scheduled" Clomon's debt for "immediate review and/or further action as deemed appropriate."

*Id.*

Another district court considered precisely the same question and came out on the opposite side of *Campuzano*. *See Womack v. Nat'l Action Fin. Servs.*, No. 06–4935, 2007 WL 2155669, at *1, 2007 U.S. Dist. LEXIS 54206, at *2 (E.D.Pa. July 25, 2007). In *Womack,* as here, the defendant sent a letter signed by a non-attorney executive. *Id.* The only basis for the alleged FDCPA violation in *Womack* was the use of the chief operating officer's name and title in the letter. The court granted the Defendant's motion to dismiss, finding that even the least sophisticated debtor would not be misled about the urgency of the letter simply because of the executive's name, and refused to extend the attorney-communication rules of 1692e(3) to non-lawyer executives. *Id.* at 2007 WL 2155669, at *4–5, 2007 U.S. Dist. LEXIS 54206, at *13–15. Even where the executive in question was also an attorney, and the letter included "Esq." after his name, another district court found that the least sophisticated consumer could "not reasonably interpret the Letter as having been issued by an attorney" and that the letter was not a violation of the FDCPA merely for inclusion of the name and title. *See Rumpler v. Phillips & Cohen Assocs., Ltd.,* 219 F.Supp.2d 251, 257 (E.D.N.Y. 2002).

By contrast, nothing in *Campuzano* or *Clomon* supports a finding that the use of Syran's name and title on the letter violated section 1692e. Cruz explicitly disclaims the application of section 1692e(3), as Syran is not an attorney. *See* Opp'n at 11–12. Beyond analogizing an executive to an attorney, the *Campuzano* ruling merely relied on *Clomon,* but such reliance is inappropriate here, where Cruz does not take issue with any part of the collection letter other than Syran's name. The *Campuzano* court referred to an "escalation" from a collection agent to an executive, *see* 497 F.Supp.2d at 663, but all of the letters Cruz received bore Syran's name, so there was no escalation from a lower-ranked employee to Syran. Further, the *Campuzano* court's supposition about why the defendants used an executive's name on the letter has no bearing on the outcome. Liability does not turn on whether or not a debt collector intends to collect a debt or why a collector chooses a particular method for encouraging payment; rather, section 1692e liability is premised on what the debtor is likely to believe. Mass mailings and form letters are a reality of modern business that would be understood even by the least sophisticated debtor. That Syran might not have personally reviewed Cruz's file or authored the letters she received would not change this outcome. The Court finds the rulings in *Womack* and *Rumpler* persuasive, and concludes that the use of Syran's name on the letters Cruz received was not misleading or deceptive, and therefore did not violate section 1692e. Nor was the use of Syran's name unfair or unconscionable, so Defendants did not violate section 1692f.

**C. *Warning Regarding Possible Negative Credit Report***

Each of the letters Cruz received from Defendants contained the following disclosure on the back of the page:

As required by law, you are hereby notified that a negative credit report reflecting on your credit record may be submitted to a credit-reporting agency if you fail to fulfill the terms of your credit obligations.

*See* Compl. Exs. B, D, F. Cruz argues that the notice violates sections 1692e, 1692e(10), and 1692f. The basis for this argument is unclear. In the First Cause of Action in Cruz's Complaint, she appears to argue that Defendants' statement that they may submit a negative credit report is false:

33. Defendant falsely represents that a negative credit report reflecting on Plaintiff's credit report would be submitted to a credit reporting agency, violating 15 U.S.C. § 1692e, § 1692e(10), and § 1692f, as an unfair and unconscionable means to collect a debt, as the negative report had already been submitted.

Compl. ¶ 33. In her Opposition to Defendants' Motion, in which she moves for summary judgment on the question of liability, Cruz focuses her argument not on whether Defendants submitted a negative credit report (or could lawfully do so), but on whether they were legally required to provide notice if they did so. *See* Opp'n at 9–11. Even within the Opposition, it is unclear whether conduct that allegedly violates the FDCPA is the warning of a possible negative credit report, or the statement that such a warning is required by law. Comparison of two passages illustrates this inconsistency:

Defendants' collection letters, dated from April 11, 2007 through July 4, 2007, warn of a legal requirement that a negative credit report may be issued to the credit bureaus for Plaintiff's failure to fulfill the terms of her credit obligations.

This collection tactic is false, because a negative credit report was issued by the original creditor, HSBC, in 2002, and

Defendants issued a negative credit report in 2004.

Opp'n at 9 (citations omitted). Plaintiff then asserts that a subsequent warning is not required:

Defendant[s] argue[ ] that the subsequent representation is allowed. Defendants cite to Cal. Civ.Code § 1785.26, arguing that the statute mandates the notification of a negative credit report. It is false to represent that the law requires a further report when the negative report has already been made.

The statute specifically precludes a requirement that additional notice be given.

*Id.* Between the Complaint and the Opposition, Plaintiff appears to identify three possible problems with the notice in Defendants' letters:

1. Defendants falsely stated that they *would* submit a negative credit report to the credit-reporting agencies if Plaintiff failed to fulfill her obligation.

2. Defendants falsely stated that they were *required* to submit a negative credit report to the credit-reporting agencies if Plaintiff failed to fulfill her obligation.

3. Defendants falsely stated that they were required to notify Plaintiff that they might submit a negative credit report if she failed to fulfill her obligation.

 None of these three supports a finding that Defendants violated the FDCPA. The first two possible interpretations of Plaintiff's claim are simply false, and the third would require an unreasonable interpretation of the letter beyond that of even the least sophisticated consumer. The Court addresses each in turn.

The first, taken from Paragraph 33 of the Complaint, is entirely without support. Nowhere in any of the letters Defendants sent to Cruz did they say that they *would* submit a negative credit report. The notice only states that "a negative credit report reflecting on your credit record *may* be submitted." Compl. Ex. B (emphasis added). Cruz cannot base her claim for violation of the FDCPA on a statement Defendants did not make, as that would require a plainly unreasonable interpretation of the letters in question.

The second similarly misstates the notice. Defendants never stated that there is a "legal requirement that a negative credit report may be issued" under any circumstances. As Defendants did not make this statement, holding them liable for it under the FDCPA would also require an unreasonable interpretation of the FDCPA.

The third possible problem with the notice, which was never clearly stated in the Complaint, is the only one which is remotely viable. Cruz argues that because the original creditor, HSBC, and Defendants had both previously submitted negative credit reports to credit reporting agencies, the notice contained in the letters was not required. Therefore, Cruz concludes, it is false to say that the notice was "required by law," so Defendants violated sections 1692e and 1692e(10).

Defendants argue that the notice they included was permitted under both federal and California law. Mot. at 8. Whether the notice was permitted and whether it was required are distinct questions. Generally speaking, both state and federal law require that when a creditor submits negative information to a credit-reporting agency, it must provide notice to the debtor. *See* Cal. Civ.Code § 1785.26(b); 15 U.S.C. § 1681S–2(a)(7)(A)(i). However, both the California and federal statutes have provisions making subsequent notice unnecessary once the initial notice has been sent. *See* Cal. Civ.Code § 1785.26(b) ("After providing this notice, a creditor may submit additional information to a credit reporting agency respecting the same transaction or extension of credit that gave rise to the original negative credit information *without providing additional notice.*") (emphasis added); *see also* 15 U.S.C. § 1681S–2 (a)(7)(A)(ii) (same).

Cruz's claim fails for two reasons. First, Cruz offered no admissible evidence to prove that either HSBC or Defendants had previously notified her that they might file negative credit reports on her account. Nor did she offer any evidence that HSBC or Defendants had actually filed such a negative credit report. Absent such evidence, there can be no doubt that the notice contained in the collection letters Defendants sent Cruz was required by law, so the Court must grant Defendants' Motion on this issue. *See* Cal. Civ.Code § 1785.26(b); 15 U.S.C. § 1681S–2(a)(7)(A)(i); *Baker*, 2006 WL 173668 at *6–7, 2006 U.S. Dist. LEXIS 2625 at *18–19.

Cruz's claim fails for a second significant reason. Even if Defendants had previously sent Cruz a notice that her failure to satisfy her debt might result in submission of a negative credit report, the Court would find no statutory violation. Additional negative credit reports are not prohibited, so Cruz's suggestion that her "credit report already bears the scars of her inability to pay the debt" is pointless. Not only could Defendants have submitted additional negative credit reports lawfully, they could have notified Cruz of those reports without running afoul of the FDCPA. Whether the letters said the notice was "required by law" or "permitted by law" or made no such reference at all, Cruz's credit report would not have been

safe. No part of the letters was false with regard to the amount of Cruz's debt or the possible consequences of her continued failure to pay that debt. Nothing in the credit reporting notice can be seen as unfairly inducing Cruz to take an action she might otherwise not take. Read in the context of the letters as a whole, the credit reporting notices would not have been misleading or unfair to the least sophisticated consumer. As such, even if Cruz had proven that Defendants previously submitted a negative credit report on her account, which she did not, she would still have failed to prove a violation of sections 1692e, 1692e(10), and 1692f.

## VI. CONCLUSION

For the foregoing reasons, the Court finds that there are no material facts requiring resolution at trial. On the evidence submitted, the Court concludes that Defendants did not violate any portion of the FDCPA. The Court therefore GRANTS Defendants' Motion for Summary Judgment and DENIES Plaintiff's Cross–Motion for Summary Judgment.

IT IS SO ORDERED.