

2008 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

12-16-2008

# Campuzano-Burgos v. Midland Credit Mgmt

Precedential or Non-Precedential: Precedential

Docket No. 07-3770

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2008

Recommended Citation

"Campuzano-Burgos v. Midland Credit Mgmt" (2008). *2008 Decisions.* Paper 9.
http://digitalcommons.law.villanova.edu/thirdcircuit_2008/9

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2008 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 07-3770
_____

LISA Y. CAMPUZANO-BURGOS;
CHARMAINE T. ANGUS, TIAISHA C. HALL;
on behalf of themselves and all others similarly situated,

vs.

MIDLAND CREDIT MANAGEMENT, INC.;
J. BRANDON BLACK; RON ECKHARDT;
MIDLAND FUNDING LLC;
MIDLAND FUNDING NCC-2 CORP.;
MRC RECEIVABLES CORP.
                                    Appellants
_____

Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. No. 07-cv-00092)
District Judge:  The Honorable Stewart Dalzell
_____

Argued:  September 11, 2008
Before:  McKEE, SMITH, and WEIS, Circuit Judges.

(Filed: December 16, 2008)

Tomio B. Narita, Esquire (ARGUED)
Jeffrey A. Topor, Esquire
Simmonds & Narita LLP
44 Montgomery Street, Suite 3010
San Francisco, CA 94104

Andrew M. Schwartz, Esquire
James W. Gicking, Esquire
Marshall, Dennehey, Warner, Coleman & Goggin
1845 Walnut Street
Philadelphia, PA 19103

Attorneys for Appellants

Cary L. Flitter, Esquire (ARGUED)
Lundy, Flitter, Beldecos & Berger, P.C.
450 N. Narberth Avenue
Narberth, PA 19072

Attorneys for Appellees

_____

OPINION

_____

WEIS, Circuit Judge.

In this appeal we consider whether a debt collection company violates the Fair Debt Collection Practices Act by

sending debtors settlement offers that bear the name of one of the company's senior executives. We conclude that no violation occurred in the circumstances presented here. Because the District Court held that the practice was not in conformity with the statute, we will remand for entry of judgment in favor of the collector-defendants.

I.

Plaintiffs Lisa Y. Campuzano-Burgos, Charmaine T. Angus and Tiaisha C. Hall filed a complaint against defendants Midland Credit Management, Inc.; Midland Funding NCC-2 Corp.; MRC Receivables Corp.; Midland Funding, LLC; J. Brandon Black; and Ron Eckhardt alleging that defendants violated the Fair Debt Collection Practices Act, 15 U.S.C. §§ 1692-1692p, in sending false, misleading, or deceptive collection notices in contravention of §§ 1692e and 1692e(9) of the Act. Plaintiffs sought to bring a class action on behalf of themselves as well as other affected Pennsylvania residents.

Both parties filed motions for summary judgment directed only to the issue of liability. In a memorandum and order, the District Court, finding a general violation of § 1692e, denied Midland Credit's motion and granted partial summary judgment to plaintiffs. Following a conference with counsel, the district judge amended his order and, pursuant to 28 U.S.C. § 1292(b), certified a controlling question of law: whether a senior officer of a collection company violates the Act by signing "dunning letters" sent to debtors. We accepted the certification.

3

Plaintiffs based their claims on three communications sent by Midland Credit to collect unpaid debts. One page documents containing three sections, the letters are nearly identical in content and form. They only materially differ with respect to the debtors' names, amounts due, and the typed names following the communications' complementary close. Two letters contain the name "Ron [or R.] Eckhardt, Executive Vice President/General Manager of Consumer Debt." On the third, "J. Black, President" appears.

One of the letters is reproduced below.

**mcm** P.O. Box 939019
San Diego, CA 92193-9019

ADDRESS SERVICE REQUESTED

08-11-2006

LISA Y CAMPUZANO

PHILADELPHIA, PA 19140

| | |
|---|---|
| Contact Information: | Tel (888) 327-0001 |
| | Fax (800) 476-2275 |
| Hours of Operation: | M-Th 6am - 7pm; Fri 6am - 5pm; |
| | Sat 6am - Noon PST |
| Current Owner: | MRC Receivables Corp. |
| Original Creditor: | HOUSEHOLD/ARBOR |

| | |
|---|---|
| MCM Account No: | |
| Current Balance: | $2,487.29 |
| Payment Due Date: | 09-10-2006 |
| Letter Code: | |

Dear LISA Y CAMPUZANO,

You won't want to miss this settlement opportunity offered to you by Midland Credit Management, Inc., servicer of the above referenced account.

Recognizing that you may have gone through some financial difficulty and have been unable to satisfy your account we would like to offer you a **positive and flexible option** to resolve your account for 25% off the Current Balance.

**If we receive payment by 09-10-2006 in the amount of**
**$1,865.47, we will consider the account balance paid in full!**

**CALL NOW!** To take advantage of this opportunity, please contact us **TOLL-FREE** at **(888) 327-0001** and any of our Account Managers will be able to assist you. When you call be sure to mention the letter code, 05553010.

**MAIL!** You may prefer to settle your Current Balance by using the Acceptance Certificate below. Simply detach the form and enclose it with your $1,865.47 payment in the envelope provided. In order to receive payment by 09-10-2006, please mail no later than 09-05-2006.

PLEASE SEE REVERSE SIDE FOR IMPORTANT INFORMATION.

Sincerely,
Ron Eckhardt
Executive Vice President / General Manager of Consumer Debt

*Please tear off and return lower portion with payment in envelope provided*

### *Acceptance Certificate*

LISA Y CAMPUZANO

PHILADELPHIA, PA 19140

| | |
|---|---|
| MCM Account Number: | |
| Current Balance: | $2,487.29 |
| **Amount Due:** | **$1,865.47** |
| Make Check Payable to: | Midland Credit Management, Inc. |
| **Payment Due Date:** | **09-10-2006** |

**mcm**
Midland Credit Management, Inc.
Department 8870
Los Angeles, CA 90084-8870

1343

5G70

In a joint stipulation of facts, the parties agreed that Eckhardt and Black are real people employed by Midland Credit. The letters accurately reflect Eckhardt and Black's titles and positions. Neither individual is an attorney nor was identified as one. As officers of Midland Credit, Eckhardt and Black authorized the mailing of the communications. Neither man, however, wrote or signed any of the letters, nor did either executive know the amount of debts or of Midland Credit's actions in attempting to collect them. Both officers lacked knowledge that the letters were sent to plaintiffs, and neither man personally directed Midland Credit's staff to mail them.

Finding no determinative precedent in this Court's opinions, the district judge reviewed the Act's jurisprudence, focusing on case law addressing § 1692e(3)[1] and dunning letters sent by attorneys. Those cases, the District Court determined, "expresse[d] a general concern with debt collectors' practice of falsely implying that someone in a position of real authority [wa]s supervising the collection of [a] debt." Campuzano-Burgos v. Midland Credit Mgmt., Inc., 497 F. Supp. 2d 660, 664 (E.D. Pa. 2007).

The Court concluded that "the use of top executives of the company as signatories is likely meant to impress upon debtors the seriousness of the communication and will almost

---

[1]Section 1692e(3) prohibits debt collectors from falsely representing or implying, in connection with the collection of a debt, "that any individual is an attorney or that any communication is from an attorney." 15 U.S.C. § 1692e(3).

6

certainly have such an effect on at least some debtors." Id. at 665. Because Eckhardt and Black in this case had no "actual involvement in the decision to send the letter[s] to a particular debtor . . . the letters . . . are deceptive and misleading within the meaning of Section 1692e." Id.

On appeal, defendants assert that the letters were not deceptive, that nothing in them suggests Midland Credit's executives had any involvement in the decision to send the communications and that they clearly appear to have originated from the company as a whole. Plaintiffs contend that the letters, when viewed from the perspective of the least sophisticated debtor, were deceptive in implying that the defendants' officers had reviewed the debts and authorized the release of the letters.

II.

In the preface to the Fair Debt Collection Practices Act, Congress explained that "[t]here is abundant evidence of abusive, deceptive, and unfair debt collection practices by many debt collectors." 15 U.S.C. § 1692(a). Those tactics "contribute to the number of personal bankruptcies, to marital instability, to the loss of jobs, and to invasions of individual privacy." Id. The Act is directed to the goals of "eliminat[ing] abusive debt collection practices by debt collectors . . . [and] insur[ing] that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged." 15 U.S.C. § 1692(e).

Of particular relevance to this case is § 1692e, a provision of the Act that states, "A debt collector may not use

7

any false, deceptive or misleading representation or means in connection with the collection of any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section." 15 U.S.C. § 1692e. There follows a listing of sixteen prohibited acts not germane to this matter.[2] Id.

A communication is deceptive for purposes of the Act if "it can be reasonably read to have two or more different meanings, one of which is inaccurate." Rosenau v. Unifund Corp., 539 F.3d 219, 222 (3d Cir. 2008) (quoting Brown v. Card Serv. Ctr., 464 F.3d 450, 455 (3d Cir. 2006)). In order to give effect to the Act's intent to "protect[] the gullible as well as the shrewd," Brown, 464 F.3d at 453 (quoting Clomon v. Jackson, 988 F.2d 1314, 1318 (2d Cir. 1993)), courts have analyzed the statutory requirements "from the perspective of the least sophisticated debtor." Rosenau, 539 F.3d at 221 (quoting Brown, 464 F.3d at 454).

This standard is less demanding than one that inquires whether a particular debt collection communication would mislead or deceive a reasonable debtor. Id. at 455.

---

[2]The District Court found a general violation of § 1692e and therefore declined to "directly address the question of whether [the letters] also violate Section 1692e(9)." Campuzano-Burgos v. Midland Credit Mgmt., Inc., 497 F. Supp. 2d 660, 665 (E.D. Pa. 2007). That subsection prohibits "[t]he use or distribution or any written communication . . . which creates a false impression as to its source, authorization, or approval." 15 U.S.C. § 1692e(9).

8

Nevertheless, the least sophisticated standard safeguards bill collectors from liability for "bizarre or idiosyncratic interpretations of collection notices" by preserving at least a modicum of reasonableness, as well as "presuming a basic level of understanding and willingness to read with care [on the part of the recipient]." Id. at 221 (quoting Wilson v. Quadramed Corp., 225 F.3d 350, 354-55 (3d Cir. 2000)).

Although established to ease the lot of the naive, the standard does not go so far as to provide solace to the willfully blind or non-observant. Even the least sophisticated debtor is bound to read collection notices in their entirety. Fed. Home Loan Mortgage Corp. v. Lamar, 503 F.3d 504, 510 (6th Cir. 2007); see also, Schweizer v. Trans Union Corp., 136 F.3d 233, 238 (2d Cir. 1998) (analyzing a debt collection letter as a whole under the least sophisticated debtor standard); Peter v. GC Servs. L.P., 310 F.3d 344, 349 (2d Cir. 2002) (same); McStay v. I.C. Sys., Inc., 308 F.3d 188, 191 (2d Cir. 2002) (same). Rulings that ignore these rational characteristics of even the least sophisticated debtor and instead rely on unrealistic and fanciful interpretations of collection communications that would not occur to even a reasonable or sophisticated debtor frustrate Congress's intent to "insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged." 15 U.S.C. § 1692(e).

Some creative collectors, convinced that conflict is counterproductive, choose conciliation over confrontation. They do this through communications that are civil and cajoling, yet conforming with the statute – "settlement letters." These

notices advise the debtor that he may settle the claim by paying a percentage of the amount owed rather than the total.

"There is nothing improper about making a settlement offer." Evory v. RJM Acquisitions Funding L.L.C., 505 F.3d 769, 775 (7th Cir. 2007). Forbidding them "would force honest debt collectors seeking a peaceful resolution of the debt to file suit in order to advance efforts to resolve the debt -- something that is clearly at odds with the language and purpose of the [Act]." Lewis v. ACB Bus. Servs., Inc., 135 F.3d 389, 399 (6th Cir. 1998).

Permitting the use of settlement letters may allow resolution of a claim without the "needless cost and delay of litigation . . . [and] is certainly less coercive and more protective of the interests of the debtor." Id. Nevertheless, in keeping with the statutory requirements, collection agencies "may not be deceitful in the presentation of th[e] settlement offer." Goswami v. Am. Collections Enter., 377 F.3d 488, 496 (5th Cir. 2004).[3]

_____

[3]A number of district courts have ruled on the conformity of settlement letters to the Act. See, e.g., Gully v. Van Ru Credit Corp., 381 F. Supp. 2d 766 (N.D. Ill. 2005) (settlement offer not deceptive); Johnson v. AMO Recoveries, 427 F. Supp. 2d 953 (N.D. Cal. 2005) (same); Hernandez v. AFNI, Inc., 428 F. Supp. 2d 776 (N.D. Ill. 2006) (same); Dupuy v. Weltman, Weinberg & Reis Co., 442 F. Supp. 2d 822, 829 (N.D. Cal. 2006) (same); Jackson v. Midland Credit Mgmt., Inc., 445 F. Supp. 2d 1015 (N.D. Ill. 2006) (same); Cruz v. MRC Receivables Corp., 563 F. Supp. 2d 1092 (N.D. Cal. 2008)

III.

With that general overview, we come to the question certified to us, "Does it violate the FDCPA for a senior officer of the debt collector, who had no personal involvement in the collection of the debts, to sign dunning letters addressed to putative debtors?" In addressing this inquiry, we are not bound by the District Court's statement of the issue. Cipollone v. Liggett Group, Inc., 789 F.2d 181, 188 n. 9 (3d Cir. 1986), aff'd in part, rev'd in part on other grounds, 505 U.S. 504 (1992). It is the order that is appealable, and "we are obliged to address [it] rather than the controlling question of law framed by the district court." Id. at 187-88; see also Yamaha Motor Corp., U.S.A. v. Calhoun, 516 U.S. 199, 205 (1996) ("appellate jurisdiction [under § 1292(b)] applies to the order certified to the court of appeals, and is not tied to the particular question formulated by the district court"). In our review, we may address any matters "fairly set forth in the record and which ultimately affect the outcome of the litigation." Beazer E., Inc. v. Mead Corp., 525 F.3d 255, 262 (3d Cir. 2008).

Preliminarily, we note that the notices sent by defendants are technically not "dunning letters," which are insistent or repeated demands for payment. See Black's Law Dictionary 502 (6th ed. 1990) (defining "dun" as "a demand for payment (*e.g.,* dun letter) to a delinquent debtor"); see also Webster's

---

(same); Pescatrice v. Robert J. Orovitz, P.A., 539 F. Supp. 2d 1375, 1381 (S.D. Fla. 2008) (whether the terms of a debt settlement offer violate the Act is a factual matter for a jury).

11

New World Dictionary 421 (3d College ed. 1988) (same). Midland Credit's settlement letters demanded nothing; they provided plaintiffs with an opportunity to settle their debts at a discounted rate.[4] Nevertheless, the defendants' communications fall within the ambit of § 1692e, which prohibits the use of "any false, deceptive, or misleading representation or means in connection with the collection of any debt." 15 U.S.C. § 1692e.

Viewed as a whole, the settlement offers are not deceptive. On their face, the notices do not appear to be letters from a corporate executive to an individual. Their font does not comport with that found in a routine business letter. The frequent use of capital letters, exclamation points, and bold-faced type, as well as the employment of various other items – such as indented text, bar-codes, a toll-free telephone number, lines, boxes, and perforation – do not fit the format to be expected in a routine commercial communication. Rather, the letters resemble an advertisement, and the use of the officers' names and titles, but not signatures at the close of the letters' text, is consistent with a form notice.

The communications' content further militates against finding that the least sophisticated debtor would believe he received a personal letter from the named officers instead of a notice from a company. Defendants' messages speak of the "settlement opportunity offered . . . by Midland Credit

---

[4]Some courts, speaking imprecisely, have used "settlement offers" and "dunning letters" interchangeably. See, e.g., Gully, 381 F. Supp. 2d at 768.

12

Management, Inc." They state, "[w]e would like to offer you a **positive and flexible option** to resolve your account . . . please contact us **TOLL-FREE** . . . and any of our Account Managers will be able to assist you." The use of the plural rather than the singular in reference to the debt collector indicates that the notices do not come from Black or Eckhardt, but from the corporation itself.

It is also pertinent that Black and Eckhardt are officers of Midland Credit and not attorneys. Analogizing senior executives to lawyers, as the District Court did, was not appropriate. Corporate executives have no more direct access to legal proceedings than other laymen.

Under the Act, attorney debt collectors warrant closer scrutiny because their abusive collection practices "are more egregious than those of lay collectors." Crossley v. Lieberman, 868 F.2d 566, 570 (3d Cir. 1989). The state has given lawyers certain privileges – such as the ability to file a lawsuit – not applicable to lay debt collectors. Avila v. Rubin, 84 F.3d 222, 229 (7th Cir. 1996). Debtors react more quickly to an attorney's communication because they believe "that a real lawyer, acting like a lawyer usually acts, directly controlled or supervised the process through which [such a] letter was sent." Id. ("It is reasonable to believe that a dunning letter from an attorney threatening legal action will be more effective in collecting a debt than a letter from a collection agency."). Accordingly, lawyers "sending dunning letters must be directly and personally involved in the mailing of the letters in order to comply with the strictures of [the Act]." Id. at 228.

13

Coming from a collection agency and lacking any reference to an attorney or legal department, the defendants' letters here do not imply, in the way that a communication from a lawyer would, that either Black or Eckhardt had some sort of actual involvement in sending the settlement offers. Id. at 227-29 (collection letters electronically signed by attorney violated the Act because the attorney had no role in the letters' preparation and mailing); see also Rosenau, 539 F.3d at 223 (reversing a grant of judgment on the pleadings to a debt collector that represented that a dunning letter came from its "Legal Department" because the least sophisticated debtor could believe that an attorney "played a role in writing or sending the letter").

It is immaterial that Black and Eckhardt did not personally write or authorize their staff to send the specific letters to plaintiffs. Midland Credit had authorized and approved the communications whose appearance and content reveal no personal efforts by the executives.

We thus find that the defendants' settlement offers cannot reasonably be read to have more than one meaning. Even the least sophisticated debtor, possessing some common sense and a willingness to read the entire document with care, would not have believed that he had received a personal communication from Black or Eckhardt.

Plaintiffs have not alleged that the settlement letters were otherwise untruthful, incorrectly listed the amount of debt owed, made false statements about the debts' enforceability, or that Midland Credit never intended to honor the terms of the offer.

14

Other courts have found that debt collector communications have the potential to be deceptive in such circumstances. See, e.g., United States v. Nat'l Fin. Servs., Inc., 98 F.3d 131, 137-39 (4th Cir. 1996) (letters from an attorney threatening legal action not actually contemplated by the debt collector may be deceptive and thus violate the Act). We also recognize that in certain contexts a completely accurate statement can be deceptive or misleading. That is not the case here.

On the record before us, the letters are honest attempts to extend a settlement proposal that cannot, even by the least sophisticated debtor, be interpreted as coming from anyone other than Midland Credit, the corporation. As such, they do not violate § 1692e of the Act.[5]

IV.

Accordingly, the question put to us will be answered in the negative. The letters were not deceptive or otherwise actionable. Because we must also address the order granting summary judgment to plaintiffs, we will reverse and remand with directions to enter summary judgment for defendants. Cipollone, 789 F.2d at 187-88.

---

[5]Our analysis and conclusion dispose of the plaintiffs' § 1692e(9) claim, which the District Court declined to address. Because the least sophisticated debtor would not believe that Black or Eckhardt had sent him a personal communication, Midland Credit's offers did not "create a false impression as to [their] source, authorization, or approval." 15 U.S.C. § 1692e(9).

15